UNITED STATES of America,
Plaintiff-Appellee,

v.

William Joseph MEAGHER, a/k/a
William Joseph Mayher,
Defendant-Appellant.

No. 75–1338.

United States Court of Appeals,
Fifth Circuit.

May 14, 1976.

Rudy Hernandez, Jacksonville, Fla. (Court appointed), for defendant-appellant.

John L. Briggs, U. S. Atty., Robert S. Yerkes, Ernst D. Mueller, Asst. U. S. Attys., Jacksonville, Fla., for plaintiff-appellee.

Before AINSWORTH, MORGAN and RONEY, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

In a non-jury trial, defendant William Joseph Meagher was convicted on January 15, 1975 of robbing the Florida Northside Bank of Jacksonville, Florida. The only defense raised by defendant was insanity at the time of the offense. Defendant supported this defense with the testimony of nine medical witnesses; the government rebutted defendant's claim of insanity through the testimony of six medical witnesses and eight lay witnesses. On appeal, the defendant alleges the commission of three reversible errors by the trial court: (1) by entering into evidence the testimony and records of Dr. Samuel Yochelson, the court violated the defendant's physician-patient privilege; (2) correspondence between

the defendant and Dr. Yochelson constituted confessions in violation of the Fifth and Sixth Amendments and were, thereby, improperly admitted; and (3) there was insufficient evidence on the issue of defendant's sanity to sustain the court's verdict of guilty.

## PHYSICIAN–PATIENT PRIVILEGE:

Defendant contends that the trial court erred in admitting into evidence the records and testimony of Dr. Samuel Yochelson, a psychiatrist employed by the National Institute of Mental Health, an agency associated with the Department of Health, Education and Welfare in Washington, D.C. The defendant had been a voluntary member of Dr. Yochelson's program in the research of criminal behavior between December, 1970 and July 1971 and between May, 1973 and September 1973; the robbery of the Jacksonville bank occurred in October of 1973. Throughout the period beginning in July of 1971, the defendant maintained a fairly regular correspondence with Dr. Yochelson. Dr. Yochelson testified that, in his professional opinion and as a result of his long personal contact with defendant, he did not believe the defendant to have been insane at the time of the bank robbery. In addition, the prosecutor introduced into evidence the correspondence between the defendant and Dr. Yochelson to support its contention that Meagher was sane when he robbed the Jacksonville bank.

Defendant objects that admission of both of these pieces of evidence violated his privilege, as a patient, against the disclosure of information confidential to a physician. Defendant's contention is without merit. Under Rule 26, Fed.R.Crim.P., the admissibility of evidence in federal criminal trials is governed by common law, except as modified by Congress. Rule 501, Fed.R. of Ev., states that unless otherwise provided, the privilege of a witness shall be governed by the principles of common law as interpreted by U.S. Courts in light of experience and reason. At common law, no physician-patient privilege existed and, therefore, we recognize no such privilege in federal crimi-

nal trials today. *United States v. Harper,* 450 F.2d 1032 (5th Cir. 1971). Even assuming that we recognized such a privilege, it is extremely doubtful that defendant Meagher could avail himself of it under the facts of this case. First, in its Proposed Rules of Evidence, Rule 504, the Supreme Court recommended a psychotherapist-patient privilege, but expressly excepted from the privilege those situations in which the patient relies upon his mental condition as an element of his defense; i. e., whenever the defendant raises an insanity defense. Rule 504(d)(3), Proposed Rules of Evidence for United States Courts and Magistrates, 51 F.R.D. 315, 366 (1971). This proposed psychotherapist-patient privilege was not accepted by Congress in its final enactment of the Federal Rules of Evidence; yet, even if such a privilege had been adopted via the Supreme Court's proposed rules, it could not be utilized when the defendant in a criminal trial claims insanity as a defense. In addition, the government persuasively argues that even if such a privilege existed the defendant waived it when he signed a general consent form, authorizing delivery of any and all medical reports concerning his mental condition to his attorney or the United States Attorney. We do not, however, decide the waiver issue in view of our refusal to recognize a physician-patient privilege.

Defendant also contends that the contents of his correspondence with Dr. Yochelson constituted "confessions" admitted in violation of his Fifth and Sixth Amendment rights. The correspondence that defendant specifies as equivalent to confessions are four letters: (1) a letter written by Meagher in January of 1972 discussing the necessity of criminal activities to support his expensive living habits; (2) a letter written by Meagher in February of 1973 admitting to the heavy use of drugs and the making of over $35,000 over a six-month period in 1972; (3) a letter written in March of 1973 in which Meagher admitted reading "Law, Liberty, and Psychiatry"; (4) and a letter written by Meagher in July of 1974, after he had been arrested for the crime in question, in which he made no specific con-

fession about the crime in question, but merely made a statement of regret at the course that his life had taken.

We do not find the admission of this correspondence into evidence to have violated defendant's Fifth Amendment privilege against self-incrimination or his Sixth Amendment right to counsel. First, and most importantly, none of the correspondence contains a confession of the robbery in question. Three of the letters were written before the Jacksonville bank robbery in October of 1973; the letter written in January of 1974 contained no confession of a particular crime, but merely discussed the defendant's regret at his "sordid" life. Defendant's counsel argues that the remarks made in these letters were used by the government as evidence of defendant's sanity. Yet, certainly statements made by the defendant which indicate that he is not insane cannot be construed as a confession. Defendant cites *United States v. Robinson,* 142 U.S.App.D.C. 43, 439 F.2d 553 (1970) in support of his argument that these letters constitute a confession inadmissible under the Fifth and Sixth Amendments. In *Robinson,* the defendant, a mental patient in a Washington, D.C. hospital, became a suspect in a rape-murder that had occurred near the hospital. He was placed in a maximum security ward in the hospital and questioned regularly by doctors and police officers until he finally made confessions to both. In ruling that the statement to the doctor was an involuntary and, thus, inadmissible confession, the court observed that at the time the defendant confessed to the doctor, he had become the chief suspect in the investigation and had been effectively placed in custody by having been removed to the maximum security ward. In this coercive atmosphere the "confession to Dr. Owens was but a continuation of what had become compelled self-incrimination by all that had occurred . . . " 439 F.2d at 562. Here, defendant was not in custody at the time he wrote three of the letters; although the fourth letter was written while defendant was in Springfield Hospital awaiting trial for the robbery in question, it was written voluntarily. Most importantly,

none of the correspondence contained a confession in the traditional sense of that word. The correspondence was not introduced to prove that defendant had admitted committing the offense—that issue was never disputed—but to show his state of mind. Accordingly, we find defendant's contention that this correspondence constituted an improperly obtained confession to be without merit. His final allegation of error—that the evidence was insufficient to prove his sanity—is likewise without substance.

AFFIRMED.