**In re Donald PEBSWORTH, A Witness Before the Special January 1982 Grand Jury.**

**Appeal of Dr. Kersey ANTIA.**

**No. 82–2726.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1983.

Decided April 22, 1983.

Kenneth L. Cunniff, Faber & Cunniff, Ltd., Chicago, Ill., for appellant.

Patrick E. Deady, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for appellee.

Before WOOD and ESCHBACH, Circuit Judges, and GRAY, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

This is an appeal from the district court's order granting the government's petition to

* The Honorable William P. Gray, Senior District Judge of the Central District of California, is sitting by designation.

enforce a subpoena issued by the Special 1982 Grand Jury in connection with its investigation of possible criminal misconduct by an Illinois psychotherapist, Dr. Kersey Antia, in fraudulently obtaining reimbursements from medical insurance companies through the submission of false psychiatric patient care records. That subpoena commanded Donald Pebsworth, as the authorized representative of Blue Cross/Blue Shield of Illinois, to produce

> [a]ny and all records concerning Dr. Kersey Anita [sic], Provider Number 0001672026, from January 1, 1978 to the present. Such records to include but not limited to physician service records, claim submission records, checks, bank drafts and other records of payment.

The requested records include, *inter alia,* the names of some of Dr. Antia's patients, a listing of their visits, and, in some cases, the patient's diagnosis.

Blue Cross and Dr. Antia as intervenor-appellant opposed the government's petition on the basis that the production of the targeted materials would violate the psychotherapist-patient privilege established by the Illinois Mental Health and Developmental Disabilities Confidentiality Act, Ill. Rev.Stat., ch. 91½ §§ 801 *et seq.* (1981), the common law, and the federal Constitution. The district court, while also discussing the substantive merits of the privilege claim, held that, even assuming *arguendo* such a privilege existed, it was waived through the patients' explicit authorization of disclosure of such records to medical insurance carriers, and their consequent expectation that the confidential character of the records would necessarily be compromised pursuant to the reimbursement process. Accordingly, the district court ordered Blue Cross to produce the documents, and subsequently denied appellant Dr. Antia's motion to reconsider. We need not reach the question of the existence or extent of the asserted psychotherapist-patient privilege, for we affirm the district court's determination that the patients' explicit authorization of disclosure of the requested records to third parties, the medical insurers, waived any privilege that might arguably have existed.

■ We note at the outset that Rule 501 of the Federal Rules of Evidence provides that the privilege of a witness in non-diversity cases "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Thus the contours and exceptions of such privileges are clearly a matter of federal common law; state-created principles of privilege do not control. *United States v. Craig,* 528 F.2d 773, 776, *aff'd en banc per curiam,* 537 F.2d 957 (7th Cir.1976). Thus, even though the Illinois Mental Health and Developmental Disabilities Confidentiality Act prevents redisclosure by insurance companies of the kind of information sought here without the patients' written consent, Ill.Rev.Stat., ch. 91½ § 806, and provides that any agreement purporting to waive this requirement is void, *id.* at § 814, we are required to independently analyze whether the patients' authorization of disclosure to the insurance carriers effected a waiver of confidentiality with respect to the limited and special uses for which they are sought by the government.

■ An express waiver is "the intentional, voluntary relinquishment of a known right." *Black's Law Dictionary* 1417 (5th ed.). Well-settled principles of testimonial privilege compel the conclusion that any arguable psychotherapist-patient privilege as to these specific kinds of billing and administrative records was intentionally and knowingly relinquished through the patients' assent to the publicizing aspect of the reimbursement and claims procedure. *United States v. Radetsky,* 535 F.2d 556, 569 n. 14 (10th Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976); *Leach v. Millers Life Ins. Co. of Texas,* 400 F.2d 179, 182 (5th Cir.1968); *Lora v. Board of Education of City of New York,* 74 F.R.D. 565, 585 (E.D.N.Y.1977); *Jones v. Prudential Life Ins. Co. of America,* 388 A.2d 476, 483 (D.C.Ct.App.1976); McCormick, *Evidence,* § 103 & n. 55 (2d ed.); Wigmore, *Evidence,* § 7(a) (McNaughton Rev. 1961). In assenting to disclosure of these documents, a reasonable patient

would no doubt be aware that routine processing of reimbursement claims would require these records to be brought into the hands of numerous anonymous employees within a large corporation. While we might well have decided differently if the information sought under the subpoena involved detailed psychological profiles of patients or substantive accounts of therapy sessions, it cannot be said that the subsequent disclosure of such fragmentary data as is involved here as part of the insurance company's legal duties in assisting a federal criminal investigation would be beyond the contemplation of the patients' waiver.

Our interpretation has been embraced by numerous other courts. For example, in a factually indistinguishable case involving a federal investigation of a physician's submission of false insurance claims, the Tenth Circuit held that the grand jury was properly entitled to subpoena service records and diagnosis forms, and that any arguable reliance upon the physician-patient privilege was prevented by the patients' explicit consent to disclosure of these records for the purpose of Medicare reimbursement. *United States v. Radetsky*, 535 F.2d 556, 559 n. 14 (10th Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976).[1] Analogously, while not invoking the specific term "waiver," the court in *Lora v. Board of Education of the City of New York*, 74 F.R.D. 565 (E.D.N.Y.1977) (Weinstein, J.), held that students receiving psychological therapy had effectively foregone their reliance on any protection of detailed, substantive records of their psychological and personal problems from disclosure *in a civil action*, through their knowledge that records of that therapy were routinely forwarded under school regulations to other school system employees. As the court observed,

A crucial element of the privilege is intent. If a patient makes a communication expecting it to be disclosed to other persons … there is no privilege. That such an expectation was entertained by students … seems significantly more probable than not. … [T]he evaluation procedures in use up to a short time ago explicitly provided access to confidential data by third parties to whom the privilege arguably does not extend. … [T]he very fact that this data is so widely disseminated suggests that students and their parents could harbor little subjective expectation of secrecy. The additional anonymous disclosure contemplated in this case cannot realistically be found to involve any disappointment of the conscious anticipations of the communicants.

*Id.* at 585. We are *a fortiori* reluctant to artificially restrict the scope of the patients' waiver where, as here, that waiver was explicit, the records are administrative rather than substantive in nature, and the success of a criminal investigation into the abuse of the psychotherapeutic care system, and not just a voluntary civil action, is at stake. *Also see Jones v. Prudential Life Ins. Co. of America*, 388 A.2d 476, 483 (D.C. Ct.App.1976) (waiver of privilege in civil action where patient consented to disclosure of information to insurance company); *Leach v. Millers Life Ins. Co. of Texas* (same); McCormick, *Evidence* § 103 & n. 55 (2d ed.) (waiver of doctor-patient privilege through disclosure clause in insurance policy is valid and effectual; holding that waiver does not extend to in-court disclosure described as "eccentric interpretation" that would "emasculate" waiver); Wigmore, *Evidence*, § 7(a) (McNaughton Rev. 1961) (contractual waiver of privilege valid).

Our finding that a waiver of any arguable psychotherapist-patient privilege exists in the specific circumstances present here is indeed less harsh than is authorized by the accepted regime governing waiver of privilege. In connection with the attorney-client, husband-wife, and usual doctor-patient privilege, for example, virtually *any* disclosure of the privileged communications to third parties vitiates the privilege. *See, e.g.*, McCormick, *Evidence*, § 93 & n. 15 (partial disclosure of attorney-client com-

---

**1.** While the court in *Radetsky* noted additionally that the patient possessed power to waive the physician-patient privilege under state law, that fact was certainly not crucial to the court's disposition of the waiver issue, since it was entitled to, and did, find a "broad waiver" as a matter of federal common law. *See United States v. Craig*, 528 F.2d at 776.

munication acts as full waiver); Wigmore, *Evidence,* § 2327 (same); McCormick, *Evidence,* § 82 (marital privilege does not apply to conversations made even inadvertently in presence of third parties); McCormick, *Evidence* § 101 (doctor-patient consultations made in presence of third parties not privileged). Here, we need not reach so far, but merely hold that such limited information as is present here was no longer protected (if, indeed, it ever was) in view of the patients' explicit authorization of disclosure and the easily anticipatable and important purposes to which that disclosed information is now sought to be put.

Dr. Antia strenuously argues that the result of our waiver holding will be to put prospective psychotherapy patients to the unconscionable Hobson's choice of either receiving no treatment or receiving treatment only at the cost of making public their illness. We trust, however, that the grand jury, related investigative bodies, and, if an indictment is returned, the trial court, will take scrupulous measures to ensure that there occurs no unnecessary disclosure of patients' names or diagnoses. Additionally, as we have already observed, this unpleasant dilemma is to a large degree already inherent in the system of third party medical reimbursement, and patients were aware that substantial intrusion upon their privacy was entailed in their consent to the processing and verification of the information at issue by numerous employees in a large, anonymous corporation. We do not believe that our very limited finding of waiver through application of traditional waiver and privilege principles will radically upset patient expectations or discourage the procurement of psychotherapeutic care.

AFFIRMED.

WILLIAM P. GRAY, Senior District Judge, concurring.

I agree with my colleagues and the district court that the grand jury is engaged in a matter of such importance that it should receive the information that it reasonably needs pertaining to the patients of Dr. Antia. I also join with Judge Wood in his expression of confidence that "... the grand jury, related investigative bodies,

and, if an indictment is returned, the trial court, will take scrupulous measures to ensure that there occurs no unnecessary disclosure of patients' names or diagnoses." Accordingly, I join in the affirmance of the order requiring adherence to the subpoena.

However, I do not share Judge Wood's view that "... the patients' explicit authorization of disclosure of the requested records to third parties, the medical insurers, waived any privilege that might arguably have existed." It seems to me that the traditional waiver doctrines are inappropriate in the context of present-day medical insurance. Such insurance plans have gained national prevalence and exist to encourage the creation of doctor-patient relationships where necessary to protect a person's physical and mental well-being. Moreover, they are designed to lessen the considerable financial burdens that, in the absence of insurance, would force many people to gamble with their health. Since the doctor-patient privilege exists to encourage such relationships and protect them when they are made, policies behind health insurance and the privilege go hand in hand.

Thorough reliance upon the confidential relationship with the doctor is particularly important to a psychiatric patient, because of the very nature of the problem that brings the two together. Such a patient may, with reluctance, recognize the practical necessity for disclosure of his identity and perhaps other information to the insurance carrier. But it by no means follows that because of this he may be deemed to have consented to become involved in a criminal investigation. It is well established that a patient or a client may consent, tacitly or otherwise, that a secretary or a nurse or a paralegal may be exposed to his disclosures, without destruction of the relevant privilege of confidentiality. This also stems from practical necessity. I think the same should be true with respect to medical insurance personnel.

In *Ryan v. C.I.R.,* 568 F.2d 531, 543 (7th Cir.1977), this court said: "The intention of Congress in enacting Rule 501 [of the Evidence Code] was that 'recognition of a privilege based on a confidential relationship

and other privileges should be determined on a case-by-case basis.' 1974 U.S.Code Cong. & Admin.News, p. 7059. *See United States v. Allery,* 526 F.2d 1362, 1366 (8th Cir.1975). In making the case-by-case determination, it is helpful to weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." I believe that, under the circumstances of this case, a weighing of the factors requires that the valid privilege here concerned give way to the need for most, perhaps all, of the information sought. But I would commend to the trial judge that the "... scrupulous measures to ensure that there occurs no unnecessary disclosure of patients' names or diagnoses ..." be considered with respect to the subpoenaed material, as well as after any resulting indictment.