**In re Subpoena Served Upon Jorge S. ZUNIGA, M.D., et al.**

**In re Subpoena Served Upon Gary R. PIERCE, M.D., et al.**

**Nos. 82–1906, 82–1907 and 82–1964.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 2, 1983.

Decided Aug. 3, 1983.

Certiorari Denied Nov. 14, 1983. See 104 S.Ct. 426.

Gordon S. Gold (argued), Evans & Luptak, Detroit, Mich., for appellant in Nos. 82–1906 and 82–1907.

Neil H. Fink (argued), Detroit, Mich., Lori R. Fregolle, for appellant in No. 82–1964.

Leonard R. Gilman, U.S. Atty., Richard L. Delonis, Asst. U.S. Atty. (argued), Detroit, Mich., for appellee in 82–1906, 82–1907 and 82–1964.

Before ENGEL and KRUPANSKY, Circuit Judges and BROWN, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

These are consolidated appeals from two orders of separate courts of the Eastern District of Michigan adjudging appellants, Jorge S. Zuniga, M.D. (Zuniga) and Gary S. Pierce, M.D. (Pierce), in civil contempt for failing to appropriately respond to subpoenas duces tecum issued by the grand jury of that district. In both cases the grand jury sought records relevant to an investigation of alleged schemes to defraud in billings submitted to Michigan Blue Cross-Blue Shield.

Pierce

Pierce is a practicing psychiatrist licensed to practice medicine in the State of Michigan. Pierce's practice is organized as a professional corporation. On November 24, 1980 a subpoena duces tecum was issued by the Grand Jury for the Eastern District of Michigan commanding Pierce, or an authorized custodian of records, to appear and produce the following records:

Patient files, progress notes, ledger cards, copies of insurance claim forms and any other documentation supporting dates of service rendered and identity of patient receiving said service for the years 1978 and 1979 for the following individuals and all dependents thereof covered under the individuals' Blue Cross/Blue Shield contract:

The names and addresses of 18 persons were listed thereunder.

The subpoena directed Pierce to appear before the grand jury on December 11, 1980. On December 3, 1980 he filed a motion to quash the subpoena in the district court. A hearing on the motion was conducted before the Honorable Patricia J. Boyle, and on February 26, 1981, Judge Boyle issued an order denying the motion to quash. The district court, in accordance with the Government's concession, held that the records to be produced would be redacted of information other than the data showing the patient's name and the fact and time of treatment.

Pierce persisted in his refusal to produce the subpoenaed documents and the Government filed a motion to show cause why he should not be held in contempt. Another hearing was conducted subsequent to which the court found Pierce in civil contempt and remanded him to the custody of the United

States Marshal until such time as he was prepared to purge himself of contempt by compliance with the subpoena. The court stayed execution of the order pending this appeal.

Zuniga

Zuniga is also a practicing psychiatrist licensed to practice medicine in Michigan and his practice is organized as a professional corporation. On March 30, 1982, the Grand Jury for the Eastern District of Michigan issued a subpoena commanding Zuniga, or an authorized custodian of records, to appear before the grand jury and produce the following records:

with respect to each of the followed (sic) names on the list attached, the following documents:

1. Redacted copies of patient files indicating patient name, date of service, type of psycho-therapy session rendered (i.e., full, half, brief)[1] and billed.
2. Original ledger cards for patients.
3. Original of any intra-office forms in support of service rendered and date thereof.

The attached list included the names of 268 persons.

On April 2, 1982, Zuniga filed a motion in the district court to quash the subpoena. A hearing was conducted before the Honorable Phillip Pratt and on May 3, 1982, Judge Pratt denied the motion but limited the subpoena to the production of records for 75 individuals. Judge Pratt also confined the scope of the subpoena to the five preceding years.

On June 18, 1982, the Government moved the district court to reconsider its May 3rd ruling. The Government proposed to limit the scope of the subpoena to 21 specific dates rather than a five year period. The Government requested, however, that the records for all of the initially named 268 individuals be produced. The lower court ruled that, in effect, the Government was proposing an entirely new subpoena and refused to grant the request.

In response, the grand jury, on July 15, 1982, issued a second subpoena ordering the production of the following documents:

Bring with you, with respect to the following dates:

| | |
|---|---|
| May 3, 1978 | October 19, 1978 |
| June 9, 1978 | November 3, 1978 |
| July 17, 1978 | November 20, 1978 |
| July 24, 1978 | December 1, 1978 |
| August 9, 1978 | May 8, 1979 |
| August 10, 1978 | May 23, 1979 |
| August 14, 1978 | June 2, 1979 |
| September 11, 1978 | June 7, 1979 [2] |
| October 9, 1978 | |

the following documents:

1. Patient appointment books, or pages therefrom, setting forth all patient names and type or length of services rendered by Dr. Zuniga, for both hospital and office services, on the above-listed dates.
2. Patient sign-in sheets for all patients treated by Dr. Zuniga on the above-listed dates.
3. Doctor's daily activity log, book or sheets, listing all patients treated by Dr. Zuniga on the above-listed dates.
4. Redacted copies of patient files, indicating patient name, date of service and type of psychotherapy session rendered (i.e. full, half, brief) for the persons listed on pages Two and Three herein.
5. Original patient ledger cards for the persons listed on pages Two and Three.
6. Original of any intra-office forms, records, or memoranda in support of service rendered on the above-listed dates to the persons listed on pages Two and Three herein.

---

1. The billing procedure under which Zuniga is compensated is allegedly structured in time segments—full session, 50 minutes; half session, 25 minutes; brief session, 20 minutes. Govt's Brief at 5.

2. A supplemental subpoena issued September 24, 1982 added four dates to this list.

The attached pages included the names of 268 persons.

On August 11, 1982 Zuniga moved to quash the second subpoena, which motion the district court denied on September 30, 1982. Zuniga persisted in his refusal to comply with the subpoena and the Government filed a motion to show cause why Zuniga should not be held in contempt. A hearing was conducted on November 4, 1982 at which Zuniga's counsel indicated that Zuniga would continue to refuse compliance. The district court found Zuniga in contempt and remanded him to the custody of the United States Marshal until such time as Zuniga purged himself of contempt by compliance. Execution of the order was stayed pending this appeal.

These appeals were consolidated pursuant to Rule 3(b), Fed.R.App.P., inasmuch as the issues joined and arguments presented in both are identical. Zuniga and Pierce contended below and maintain on appeal that the documents sought by the grand jury are protected from disclosure for three reasons: (1) a psychiatrist-patient privilege, (2) the patients' constitutional privacy right and (3) the Fifth Amendment's privilege against self-incrimination.

With respect to appellants' first argument, the point of departure for analysis is Rule 501, Fed.R.Ev. That Rule provides:

RULE 501—GENERAL RULE

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law.

Two preliminary observations are necessary. Initially, inasmuch as the subpoenas in issue are the product of a federal grand jury investigation into alleged violations of federal criminal law, questions of privilege are governed by federal law. *United States v. Gillock*, 445 U.S. 360, 369, 100 S.Ct. 1185, 1191, 63 L.Ed.2d 454 (1980). Second, although the subpoena powers of the grand jury are extremely broad, it may not use its authority to "violate a valid privilege, whether established by the Constitution, statutes, or the common law." *United States v. Calandra*, 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). Thus, the Court must determine if federal law recognizes a psychiatrist-patient privilege and, if so, whether enforcement of the grand jury subpoenas would violate that privilege.

Rule 501 was substituted by Congress for specific rules of privilege submitted in the rules proposed by the Judicial Conference Advisory Committee on Rules of Evidence and approved by the Supreme Court. 56 F.R.D. 183, 230–261 (1972) (hereafter "Proposed Rules"). Rule 504 of the Proposed Rules embodies a psychotherapist-patient privilege:

PSYCHOTHERAPIST–PATIENT PRIVILEGE

(1) Definitions.

(1) A "patient" is a person who consults or is examined or interviewed by a psychotherapist.

(2) A "psychotherapist" is (A) a person authorized to practice medicine in any state or nation, or reasonably believed by the patient so to be, while engaged in the diagnosis or treatment of a mental or emotional condition, including drug addiction, or (B) a person licensed or certified as a psychologist under the laws of any state or nation, while similarly engaged.

(3) A communication is "confidential" if not intended to be disclosed to third persons other than those present to further the interest of the patient in the consultation, examination, or interview, or persons reasonably necessary for the transmission of the communication, or

persons who are participating in the diagnosis and treatment under the direction of the psychotherapist, including members of the patient's family.

(b) General rule of privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of his mental or emotional condition, including drug addiction, among himself, his psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family.

(c) Who may claim the privilege. The privilege may be claimed by the patient, by his guardian or conservator, or by the personal representative of a deceased patient. The person who was the psychotherapist may claim the privilege but only on behalf of the patient. His authority so to do is presumed in the absence of evidence to the contrary.

(d) Exceptions.

(1) *Proceedings for hospitalization.* There is no privilege under this rule for communications relevant to an issue in proceedings to hospitalize the patient for mental illness, if the psychotherapist in the course of diagnosis or treatment had determined that the patient is in need of hospitalization.

(2) *Examination by order of judge.* If the judge orders an examination of the mental or emotional condition of the patient, communications made in the course thereof are not privileged under this rule with respect to the particular purpose for which the examination is ordered unless the judge orders otherwise.

(3) *Condition an element of claim or defense.* There is no privilege under this rule as to communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense.

The fact that Congress elected not to accept proposed Rule 504 does not preclude recognition of a psychiatrist-patient privilege. On the contrary, "[t]he Federal Rules of Evidence acknowledge the authority of the federal courts to continue the evolutionary development of testimonial privilege in federal criminal trials 'governed by the principles of the common law as they may be interpreted ... in the light of reason and experience.'" *Trammel v. United States,* 445 U.S. 40, 48, 100 S.Ct. 906, 911, 63 L.Ed.2d 186 (1980) *quoting* Fed.R.Evid. 501. Congressional enactment of Rule 501 thus, "provide[s] the courts with greater flexibility in developing rules of privilege on a case-by-case basis." *United States v. Gillock, supra* 445 U.S. at 368, 100 S.Ct. at 1191.

Specifically, with regard to a psychotherapist-patient privilege, the Senate Report to the new Federal Rules stated:

> The committee has received a considerable volume of correspondence from psychiatric organizations and psychiatrists concerning the deletion of rule 504 of the rule submitted by the Supreme Court. It should be clearly understood that, in approving this general rule as to privileges, the action of Congress should not be understood as disapproving any recognition of a psychiatrist-patient, or husband-wife, or any other of the enumerated privileges contained in the Supreme Court rules. Rather, our action should be understood as reflecting the view that the recognition of a privilege based on a confidential relationship and other privileges should be determined on a case-by-case basis.

S.Rep. No. 93–1277, 93d Cong., 2d Sess. (1974) *reprinted in* [1974] U.S.Code Cong. & Ad.News 7051, 7059.

Clearly then, the Court has the authority to recognize a psychiatrist-patient privilege. This authority must be exercised with caution. As the Supreme Court has noted "[e]videntiary privileges in litigation are not favored." *Herbert v. Lando,* 441 U.S. 153, 176, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979), and "[w]hatever their origins,

these exceptions to the demand for every man's evidence are not lightly created nor expansively construed for they are in derogation of the search for the truth." *United States v. Nixon,* 418 U.S. 683, 711, 94 S.Ct. 3090, 3109, 41 L.Ed.2d 1039 (1974).

The rationale to support a psychotherapist-patient privilege, however, is readily apparent:

> Among physicians, the psychiatrist has a special need to maintain confidentiality. His capacity to help his patients is completely dependent upon their willingness and ability to talk freely. This makes it difficult if not impossible for him to function without being able to assure his patients of confidentiality and, indeed, privileged communication. Where there may be exceptions to this general rule ..., there is wide agreement that confidentiality is a *sine qua non* for successful psychiatric treatment. The relationship may well be likened to that of the priest-penitent or the lawyer-client. Psychiatrists not only explore the very depths of their patients' conscious, but their unconscious feelings and attitudes as well. Therapeutic effectiveness necessitates going, beyond a patient's awareness and, in order to do this, it must be possible to communicate freely. A threat to secrecy blocks successful treatment.

Report No. 45, Group for the Advancement of Psychiatry 92 (1960) *quoted in* Advisory Committee's Notes to Proposed Rules, 56 F.R.D. at 242. Similarly, the D.C. Circuit has observed:

> Many physical ailments might be treated with some degree of effectiveness by a doctor whom the patient did not trust, but a psychiatrist must have his patient's confidence or he cannot help him. "The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be expected of them, and that

> they cannot get help except on that condition. * * * It would be too much to expect them to do so if they knew that all they say—and all that the psychiatrist learns from what they say—may be revealed to the whole world from a witness stand."

*Taylor v. United States,* 222 F.2d 398, 401 (D.C.Cir.1955) *quoting* Guttmacher and Weihofen, Psychiatry and The Law (1952), p. 272.

Despite these compelling considerations, the psychotherapist-patient privilege has received a mixed reception in the federal courts. *See United States v. Lindstrom,* 698 F.2d 1154 (11th Cir.1982) (indicating privilege does not exist); *United States v. Meagher,* 531 F.2d 752 (5th Cir.), *cert. denied* 429 U.S. 853, 97 S.Ct. 146, 50 L.Ed.2d 128 (1976) (rejecting privilege); *Ramer v. United States,* 411 F.2d 30 (9th Cir.), *cert. denied* 396 U.S. 965, 90 S.Ct. 445, 24 L.Ed.2d 431 (1969) (assuming privilege exists); *United States v. Witt,* 542 F.Supp. 696 (S.D. N.Y.) *aff'd.* 697 F.2d 301 (2d Cir.1982) (refusing to recognize privilege); *United States v. Layton,* 90 F.R.D. 520 (N.D.Cal. 1981) (privilege did not exist at common law and therefore not at federal law); *United States v. Brown,* 479 F.Supp. 1247 (D.Md.1979) (no general federal privilege); *Flora v. Hamilton,* 81 F.R.D. 576 (M.D.N.C. 1978) (recognizing privilege to limited extent); *United States v. Williams,* 337 F.Supp. 1114, 1117 (S.D.N.Y.1971) (no need to decide status of the psychologist-patient privilege at federal law). In both *Lindstrom* and *Meagher* in which the Eleventh and Fifth Circuits refused to accept the privilege, the courts simply equated it with the physician-patient privilege without analyzing the unique aspects of the psychotherapist-patient relationship. This Court, therefore, does not find these authorities persuasive.

Contrawise, the states have demonstrated their willingness to recognize the privilege and a substantial number, including Michigan, have adopted some form of psycho-

therapist-patient privilege.[3] In this regard it should be noted that, although federal law controls, the Supreme Court has indicated "that the privilege law as developed in the states is [not] irrelevant," and "has taken note of state privilege laws in determining whether to retain them in the federal system." *United States v. Gillock, supra,* 445 U.S. at 369 n. 8, 100 S.Ct. at 1191 n. 8.

Furthermore, the Court observes that the psychotherapist-patient privilege is advocated by several respected commentators. *See e.g.* Weinstein's Evidence *supra* at ¶ 504 *et seq.;* Slovenko, Psychiatry and a Second Look at the Medical Privilege, 6 Wayne L.Rev. 175 (1960).

In the final analysis, the issue to be decided is "whether the privilege . . . promotes sufficiently important interests to outweigh the need for probative evidence in the administration of criminal justice." *Trammel v. United States, supra* 445 U.S. at 52, 100 S.Ct. at 913.

■ The interests promoted by a psychotherapist-patient privilege are extensive. As the Advisory Committee Notes stated: "confidentiality is the *sine qua non* for successful treatment." 56 F.R.D. at 242, *quoting* Report No. 45, Group For the Advancement of Psychiatry 92 (1960). The inability to obtain effective psychiatric treatment may preclude the enjoyment and exercise of many fundamental freedoms, particularly those protected by the First Amendment. "Mental illness may prevent one from understanding religious and political ideas, or interfere with the ability to communicate ideas. Some level of mental health is necessary to be able to form belief and value systems and to engage in rational thought." Smith, Constitutional Privacy in Psychotherapy, 49 Geo.Wash.L.Rev. 127 (1980).

The interest of the patient in exercising his rights is also society's interest, for society benefits from its members active enjoyment of their freedom. Moreover, society has an interest in successful treatment of mental illness because of the possibility that a mentally ill person will pose a danger to the community.

This Court has evaluated these interests, taking into account the aforementioned position of the states, the Judicial Conference Advisory Committee and various commentators, and finds that these interests, in general, outweigh the need for evidence in the administration of criminal justice. Therefore, we conclude that a psychotherapist-patient privilege is mandated by "reason and experience." Rule 501.

■ Having recognized the compelling necessity for the privilege, it remains for the Court to determine its applicability to the instant action. It should be emphasized in this regard that no attempt is made here to define the appropriate perimeters of the privilege. Just as the recognition of privileges must be undertaken on a case-by-case basis, so too must the scope of the privilege be considered. *See, Upjohn Co. v. United States,* 449 U.S. 383, 396–97, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (1981). This is necessarily so because the appropriate scope of a

---

**3.** *See e.g.* Alaska Rules of Court, Rule 504, Ala.Code § 34–26–2; Ariz.Rev.Stat.Ann. § 32–2085; Ark.Stat.Ann. § 28–1001, Rule 503; Cal. Evid.Code § 1010 *et seq.;* Colo.Rev.Stat. § 13–90–107(g); Conn.Gen.Stat.Ann. § 52–146c *et seq.;* Delaware Rules of Ev.R. 503; Fla.Stat. Ann. § 90–503; Ga.Code Ann. 38–418; Hawaii Rev.Stat. Title 33, ch. 626, 1980 Special Rules Pamphlet, Rule 504.1; Idaho Code § 54–2314; Ill.Rev.Stat., ch. 91½, § 801 *et seq.* Ind.Stat. § 25–33–1–17; Ky.Rev.Stat. § 421.215; La. Rev.Stat. § 13:3734; Maine Rules of Ev. 503; Md.Cts. & Jud.Proc.Code § 9–109; Mass.Gen. Laws Ann. ch. 233, § 20B; Mich.Comp.Laws Ann. § 330.1750; Minn.Stat.Ann. § 595.02; Miss.Code § 73–31–29; Mo.Rev.Stat.Ann. § 337.055; Mont.Code Ann. § 26–1–807, Neb. Rev.Stat. § 27–504; Nev.Rev.Stat. § 49.215 *et seq.;* N.H.Rev.Stat.Ann. § 330–A.19; N.J.Stat. Ann. § 45:14B–28; N.M.Rules of Ev. 504; N.Y. Civ.Prac.Law and Rules § 4507; N.C.Gen.Stat. § 8–53.3; N.D.Rules of Ev. 503; Okla.Stat.Ann. Tit. 12 § 2503; Ore.Rev.Stat. § 40.230; Tenn. Code Ann. § 24–1–207; Utah Code Ann. § 58–25–8, Vt.Stat.Ann.Tit. 12 § 1612, Va.Code § 8.01–400.2; Wash.Rev.Code § 18.83.110; Wis.Stat.Ann. § 905.04; Wyo.Stat.Ann. § 33–27–103. *See also* D.C.Code § 14–307.

The foregoing enactments vary in scope and application and no attempt is made here to classify them or the decisions construing the provisions and their exceptions. *See generally* 44 A.L.R.3d 24.

privilege, like the propriety of the privilege itself, is determined by balancing the interests protected by shielding the evidence sought with those advanced by disclosure.

■ In the case at bar the information sought by the grand jury subpoenas is limited to the identity of the patients, the dates on which they were treated and the length of the treatment on each date.[4] Appellants acknowledge that, with respect to the attorney-client[5] or physician-patient privilege,[6] these facts do not generally fall within the privilege.

The appellants argue with some force, however, that the *identity* alone of the patient must be privileged to maintain the effective psychotherapist-patient relationship the general privilege seeks to promote. *See* Weinstein's Evidence ¶ 504[05]; Slovenko, *supra* at 188 n. 46.

It may be true that some persons would be hesitant to engage the services of a psychiatrist if confronted with the prospect that the mere fact of their treatment might become known. This consideration is not insubstantial. However, as indicated, the interest of society in obtaining all evidence relevant to the enforcement of its laws commands a high priority.

In weighing these competing interests, the Court is constrained to conclude that, under the facts of this case, the balance tips in favor of disclosure. The essential element of the psychotherapist-patient privilege is its assurance to the patient that his innermost thoughts may be revealed without fear of disclosure. Mere disclosure of the patient's identity does not negate this element. Thus, the Court concludes that, as a general rule, the identity of a patient or the fact and time of his treatment does not fall within the scope of the psychotherapist-patient privilege. Accordingly, the information sought by the grand jury subpoenas is not privileged.[7]

■ Even assuming arguendo that the identity of a patient and the times and dates of his treatment were within the scope of the psychotherapist-patient privilege, the patients in this case could not benefit from that privilege. The patients in the case at bar have already disclosed their identities to a third party, i.e. Blue Cross/Blue Shield. In so doing they have waived the privilege to the extent of their disclosure.

A recent case from the Seventh Circuit is directly on point. In *In Re: Pebsworth* 705 F.2d 261 (7th Cir.1983), a federal grand jury issued a subpoena to the authorized representative of Blue Cross/Blue Shield of Illinois commanding production of all records pertaining to an Illinois psychiatrist. The information in the records included the names of the psychiatrist's patients, an enumeration of their visits and, in some cases, the patient's diagnosis.

Blue Cross and the psychiatrist opposed enforcement of the subpoena, urging that enforcement would violate the Illinois psychotherapist-patient privilege. Ill.Rev. Stat., ch. 91½, § 801 *et seq.* The lower court granted enforcement concluding that the patients had waived their privilege by virtue of their consent to disclosure to the insurance carriers.

The Seventh Circuit affirmed, stating, in pertinent part:

> In assenting to disclosure of these documents, a reasonable patient would no doubt be aware that routine processing of reimbursement claims would require these records to be brought into the hands of numerous anonymous employees within a large corporation. While we might well have decided differently if the information sought under the subpoena

---

4. *See* pp. 634–636 *supra*.

5. *See* Weinstein's Evidence *supra* at ¶ 503(a)(4)[02].

6. *See* McCormick, Evidence § 100 (2d ed. 1972).

7. The Court would hasten to add that this holding does not mean that a court could not, in its discretion, or compelled by considerations of constitutional privacy, *see infra* pp. 641–642, protect the identity of patients. *See generally, Lora v. Board of Ed. of City of New York,* 74 F.R.D. 565 (E.D.N.Y.1977).

involved detailed psychological profiles of patients or substantive accounts of therapy sessions, it cannot be said that the subsequent disclosure of such fragmentary data as is involved here as part of the insurance company's legal duties in assisting a federal criminal investigation would be beyond the contemplation of the patients' waiver.

*Id.* 705 F.2d at 262–63.

The Seventh Circuit's waiver analysis is sound and fully applicable to the case at bar and this Court adopts that analysis. The Court again emphasizes, *see supra* n. 7, that despite the waiver, it is permissible, and even advisable, for the appropriate investigative agency or the court to "take scrupulous measures to ensure that there occurs no unnecessary disclosure of patients' names or diagnoses." *In Re: Pebsworth, supra,* 705 F.2d at 265.

In their second argument appellants assert that a constitutional right of privacy attaches to the psychiatrist-patient relationship. There is precedent for this assertion. *See e.g. Caesar v. Mountanos,* 542 F.2d 1064 (9th Cir.1976), *cert. denied* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977); *United States v. Layton, supra; Hawaii Psychiatric Soc. v. Ariyoshi,* 481 F.Supp. 1028 (D.Hawaii 1979); *Lora v. Board of Ed. of City of New York, supra. See also,* Smith, Constitutional Privacy in Psychotherapy, *supra.*

Appellants maintain that this constitutional right encompasses their patients' interest in prohibiting disclosure of the personal information sought by the grand jury.[8] Assuming arguendo the existence of such a right[9] it is not absolute.[10]

In *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), for example, a New York statute which required that the names of all persons who obtained certain drugs be forwarded to the State Department of Health was challenged by patients and physicians charging that the law invaded the patients' privacy rights. The Supreme Court noted that "disclosures of private medical information to doctors, to hospital personnel, *to insurance companies,* and to public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient," *Id.* at 603, 97 S.Ct. at 878 (emphasis added). Thus, a person possesses no reasonable expectation that his medical history will remain *completely* confidential.

This is not to say that a person has no interest in protecting, to some extent, the confidentiality of his medical records. The Supreme Court stressed that the New York statute provided safeguards designed to insure proper utilization of the information and to prevent wholesale public disclosures of the information. The Court commented:

> New York's statutory scheme, and its implementing administrative procedures, evidence a proper concern with, and protection of, the individual's interest in privacy. We therefore need not, and do not, decide any question which might be presented by the unwarranted disclosure of accumulated private data—whether intentional or unintentional—or by a system that did not contain comparable security provisions.

*Id.* at 606–07, 97 S.Ct. at 879–81.

The Supreme Court concluded, balancing the limited invasion of privacy with the State's interest in prohibiting illegal drug activity, that the statute did not effect an unconstitutional infringement of privacy interests.

---

**8.** The Court accepts, for purposes of this Opinion, the standing of the appellants to assert this right of their patients. *See generally, Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1972); *Lora v. Board of Ed. of New York, supra* at 569.

**9.** *Compare, J.P. v. DeSanti,* 653 F.2d 1080 (6th Cir.1981) (no constitutional right to non-disclosure of juveniles' social histories).

**10.** *See generally, United States v. Lindstrom, supra,* (privacy interest of witnesses in criminal case regarding her psychiatric records must yield to the right of the defense to effective cross-examination).

A recent decision from this Circuit is also instructive. In *General Motors Corp. v. Director of the National Institute for Occupational Safety and Health,* 636 F.2d 163 (6th Cir.1980) *cert. denied* 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981), the National Institute for Occupational Safety and Health (Institute) issued a subpoena duces tecum directing General Motors Corporation to produce the medical records of all employees engaged in a certain manufacturing process at General Motors' plant in Dayton. General Motors sought relief from the subpoena, contending, *inter alia,* that enforcement would invade the privacy rights of the employees.

The district court ordered General Motors to produce the records but authorized deletion of the employees' names and addresses. Both parties appealed.

This Court, while acknowledging the privacy rights of the employees, concluded that the Institute was entitled to enforcement of its subpoena including the request for specific names. The Court was confident that the district court would formulate and implement appropriate measures to protect "the constitutional rights of the individuals involved." *Id.* at 166.

In the case at bar the grand jury is seeking limited information pertaining to individual patients. The identity of these patients, as indicated, is already known to the grand jury from the insurance forms in its possession. Thus, as in *Whalen,* the patients' interest in the privacy of the information is diminished.

Furthermore, the information sought will be protected by the veil of secrecy attending grand jury proceedings. Accordingly, as in *Whalen* and *General Motors Corp.,* the information will be disclosed only to the minimal extent necessary to promote a proper governmental interest and will not be subject to widespread dissemination.[11]

In sum, weighing the slight intrusion on the patients' privacy interest against the need for the grand jury to conduct an effec-

tive and comprehensive investigation into alleged violation of the law, the Court concludes that enforcement of the subpoenas does not unconstitutionally infringe on the rights of the patients.

■■ The appellants' final argument needs only brief comment. Appellants assert that the records sought are protected by the Fifth Amendment's privilege against self-incrimination. As indicated, appellants' practices are maintained as professional corporations and the billing records are corporate rather than private records. Thus the Fifth Amendment may not be raised as a bar to production of this information. *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974).

In accordance with the foregoing, the Court concludes that the appellants' refusal to comply with the grand jury subpoenas was unjustified and the lower courts' judgments of contempt were therefore proper. Accordingly, the judgments are hereby affirmed.

---

11. The Court need not presently decide what procedures will be appropriate should the grand jury investigation lead to criminal pro-

ceedings wherein the Government would seek to utilize the information as evidence.