Elaine **KENNEDY, et al., Plaintiffs,**

v.

**DERMATOLOGY ASSOCIATES OF KNOXVILLE, P.C., and Ricardo M. Mandojana, M.D., Defendants.**

**No. 3:97–CV–534.**

United States District Court,
E.D. Tennessee.

Feb. 22, 1999.

---

David E. Waite, Ralph Brown & Associates, Donna Keene Holt, Knoxville, TN, for Elaine and Jack Kennedy.

Edward G. White, II, Hodges, Doughty & Carson, Knoxville, TN, for Dermatology Associates of Knoxville, P.C.

James G. O'Kane, Baker, McReynolds, Byrne, O'Kane, Shea & Townsend, Knoxville, TN, for Ricardo M. Mandojana, M.D.

### MEMORANDUM AND ORDER

MURRIAN, United States Magistrate Judge.

The plaintiffs' Motion to Compel and Notice to Defendants and Tennessee Psychiatry and Psychopharmacology Clinic, P.C. has been referred to the undersigned pursuant to Fed.R.Civ.P. 72(a) and the Rules of this Court [Docs. 82, 84]. A response has been filed by the Tennessee Psychiatry and Psychopharmacology Clinic, P.C. ("TPP Clinic") and a response has been filed by the defendants in this case [Docs. 89, 91]. TPP Clinic is not a party to this case; rather, it is the custodian of the records which are at issue in connection with this motion to compel discovery. The factual background of this case is set forth in a Memorandum and Order filed June 24, 1998 [Doc. 45]. That background will not be repeated here. Suffice it to say that TPP Clinic holds records and information pertaining to the treatment of defendant Dr. Ricardo M. Mandojana pertaining to his psychiatric treatment on an out-patient basis. Dr. Mandojana allegedly committed malpractice by failing to diagnose Mrs. Kennedy's melanoma cancer after reading her slide on August 18, 1988. Plaintiffs contend that the psychiatric records compiled by the TPP Clinic between August, 1988 and December, 1990 are relevant and discoverable in connection with the following claims which the plaintiffs are making: (1) That Dr. Mandojana and defendant Dermatology Associates of Knoxville, P.C. ("DAK") were guilty of malpractice in connection with the removal of a skin lesion from Mrs. Kennedy's arm, the diagnosis of her disease and her treatment, (2) that DAK was negligent in the hiring and employment of Dr. Mandojana, and (3) that Dr. Mandojana fraudulently or negligently misrepresented his qualifications and competence to practice medicine in Tennessee and obtained his employment at DAK and his Tennessee medical license under false pretenses. In a Memorandum and Order filed July 1, 1998, the Honorable Leon Jordan granted defendants' motion dismissing the claims for fraudulent and negligent misrepresentation and the allegations for negligence *per se*. The claim regarding the alleged negligent hiring was not dismissed, however [Doc. 59]. The claim against DAK and Dr. Mandojana concerning malpractice remains in the case also.

Pursuant to Fed.R.Civ.P. 45(d)(2), TPP Clinic has produced a privilege log setting forth the documents withheld and statutes relied upon. Exhibit 1 to Doc. 79.

The plaintiffs claim that Dr. Mandojana has waived any privilege he may have had in regard to these documents. Plaintiffs state that four of the documents produced by TPP Clinic pursuant to the undersigned's Memorandum and Order filed June 24, 1998, were releases signed by Dr. Mandojana. Those releases are Exhibits 1 through 4 to Doc. 83.

Exhibit 1 is a communication from Equifax to TPP Clinic and it is an authorization to provide to Equifax as agent for Provident Life and Accident Insurance Company records that can be transmitted to Provident Life. Exhibit 2 is an authorization to Shenandoah Life Insurance Company pursuant to an application for insurance. It appears to be a

communication made by Dr. Jobson and Dr. Cord at TPP Clinic to Shenandoah. Defendants represent that this is the authorization and the disclosure to the third party with regard to Shenandoah Life Insurance Company.

Similarly, both an authorization and disclosure to another insurance company appear in Exhibit 3.

Exhibit 4 is an authorization to release information to the Department of the Army and a notation on Exhibit 4a that records of lithium levels had been sent. A list of drugs and those drug levels are part of the disclosure to plaintiffs and there is no indication in Exhibit 4 that any other records or information have been sent.

Defendants and TPP Clinic argue that these limited disclosures do not constitute a waiver of privilege as to confidential communications between psychiatrist and patient and that the confidential, intimate conversations between psychiatrist and patient have not been waived by these disclosures. Defendants and TPP Clinic argue that these documents do not constitute a blanket waiver as to the entire records of TPP; that the authorizations contemplate that information will be sent to the designated party and only that information deemed appropriate and necessary by the doctor; that the authorizations do not constitute a waiver of or an exception to the psychiatrist/patient privilege; that the disclosure of some information to these third parties, such as Shenandoah Life Insurance Company, does not constitute a waiver of everything in TPP Clinic's file; and finally, that further disclosure should not be required.

The plaintiffs argue that Dr. Mandojana has, on four separate occasions, executed unrestricted authorizations for the release of his records from TPP Clinic to third parties; that release of information to third parties is a waiver of any privilege; that the caselaw supports the proposition that patients may not benefit from the psychotherapist—patient privilege where they had already disclosed that information to a third party; and that by executing these releases Dr. Mandojana has authorized release of his entire file at TPP Clinic to third parties.

## I. *Choice of Law*

Jurisdiction in this case is based upon the citizenship of the parties and is not in controversy. 28 U.S.C. § 1332. Therefore, pursuant to Fed.R.Evid. 501 the substantive law of privilege of the State of Tennessee applies in this case.

## II. *Legal Principles*

Tennessee recognizes a privilege for communications between a psychiatrist and patient.

**Communications between Psychiatrist and Patient.**—(a) Communications between a patient and a licensed physician when practicing as a psychiatrist in the course of and in connection with a therapeutic counseling relationship regardless of whether the therapy is individual, joint, or group, are privileged in proceedings before judicial and quasi—judicial tribunals. Neither the psychiatrist nor any member of the staff may testify or be compelled to testify as to such communications or otherwise reveal them in such proceedings without consent of the patient....

T.C.A. § 24–1–207 (1998 Supp.). Plaintiffs in the instant action do not dispute in any way that the privilege is applicable but they claim that it has been waived.

The undersigned agrees with the plaintiffs that whatever information has been disclosed to third parties like Shenandoah Life Insurance Company or Equifax pursuant to the four authorizations signed by Dr. Mandojana is not privileged. The privilege has been waived. I do not agree, however, with plaintiffs that these four authorizations to release confidential information constitute a blanket waiver of all records in the possession of TPP Clinic.

Clearly, disclosure of part of a privileged communication waives the privilege as to the disclosed information.

\*     \*     \*     \*     \*     \*

If part of a privileged communication is disclosed, the court may find that the remainder of the communication is also no longer privileged. In making this determination some courts find that the waiver

applies to at least those other portions that are needed to make the disclosed part comprehensible. Other courts find waiver for communications on the topics which the disclosed material places in issue. These courts exercise their discretion in light of the objectives of the particular privilege involved.

3 Jack B. Weinstein and Margaret A. Berger, *Weinstein's Federal Evidence* § 511.06 (Joseph M. McLaughlin, ed., Mathew Bender 2d ed.1997) (footnotes omitted).

All parties here rely on the case of *In re Zuniga*, 714 F.2d 632 (6th Cir.1983). This case involved two psychiatrists who were held in civil contempt for failing to respond to subpoenas duces tecum issued by a federal grand jury. The doctors argued that the documents sought by the grand jury were protected from disclosure by the psychiatrist—patient privilege. This case involved federal common law with regard to privileges, but I have no reason to believe that Tennessee law would demand any different result than that reached in *Zuniga*. The federal grand jury was investigating alleged schemes to defraud in billings of health care providers to Michigan Blue Cross and Blue Shield. The information sought by the grand jury was limited to the identification of patients, the dates on which they were treated, and the length of treatment on each date. 714 F.2d at 640. The district court, in accordance with the government's concession, held that the records to be produced would be redacted of information other than the data showing the patient's name and the fact and time of treatment. 714 F.2d at 634. Thus, the facts in *Zuniga* are very different from the facts in the instant case. Plaintiffs in the instant case contend that there has been a blanket waiver of any privilege with regard to all documents in the possession of TPP Clinic.

The court in *Zuniga* first held that the information sought by the grand jury subpoenas was not privileged and concluded that as a general rule the identification of a patient or the fact and time of treatment did not fall within the scope of the psychotherapist—patient privilege. The court went on to say that, assuming arguendo that the identity of a patient and the times and dates of his treatment were within the scope of the psychotherapist—patient privilege, the patients in *Zuniga* "have already disclosed their identities to a third party, *i.e.*, Blue Cross–Blue Shield. In so doing they have waived the privilege **to the extent of their disclosure.**" 714 F.2d at 640 (emphasis added).

The plaintiffs also rely on *In re Pebsworth*, 705 F.2d 261 (7th Cir.1983). That case also involved a federal grand jury subpoena to Blue Cross/Blue Shield of Illinois commanding production of all records pertaining to an Illinois psychiatrist. Information included the names of the patients, an enumeration of their visits, and, in some cases, the patients' diagnoses.

> In assenting to disclosure of these documents, a reasonable patient would no doubt be aware that routine processing of reimbursement claims would require these records to be brought into the hands of numerous anonymous employees within a large corporation. **While we might well have decided differently if the information sought under the subpoena involved detailed psychological profiles of patients or substantive accounts of therapy sessions,** it cannot be said that the subsequent disclosure of such fragmentary data as is involved here as part of the insurance company's legal duties in assisting a federal criminal investigation would be beyond the contemplation of patients' waiver.

705 F.2d at 263 (emphasis added).

Thus, both *Zuniga* and *Pebsworth* make the point that authorizations to release medical information to third parties such as insurance companies is a waiver of the privilege but only to the extent of any disclosure that is made. This seems to be a very reasonable approach since the patient signing the authorization to release information would be contemplating that the information released would be that necessary for the particular matter involved, *e.g.*, the issuance of a life insurance policy. It does not stand to reason that the patient's authorization to release medical information to a third party like a life insurance company would be contemplated by the patient as a release of all information in the file of the psychiatrist.

Tennessee appears to follow the same rule with regard to waiver. *Taylor v. State,* 814 S.W.2d 374 (Tenn.Cr.App.1991) involved the waiver of a privileged communication between attorney and client. In that case a convicted criminal objected to testimony by his attorney in a post-conviction proceeding contending that the testimony violated the attorney-client privilege. The attorney was allowed to testify on the issue of whether the defendant had voluntarily entered a plea of guilty. The Court of Criminal Appeals found that Taylor had waived his privilege since he had executed a petition for acceptance of his guilty plea in which he stated that his attorney had discussed with him the nature of the charges and his rights pertaining thereto. The court found that since the attorney's testimony was limited to the question of whether the guilty plea had been entered voluntarily, the execution of the petition for acceptance by the criminal defendant constituted a waiver of the privilege to that extent only. Thus, *Taylor* stands for the proposition that the privilege is only waived when the very communication sought to be protected has been disclosed. As indicated by the quotation by Weinstein's treatise on evidence set out above, the court has considerable discretion in light of the objections of the particular privilege involved. Obviously, Tennessee law provides protection for communications between psychiatrists and patients subject to very limited exceptions. This is a privilege which is worth protecting because it encourages people who might not otherwise seek treatment to seek treatment from psychiatrists without fear that the records and communications of such treatment will be divulged.

### III. *Application of Law to the Facts of this Case*

The undersigned concluded in my Memorandum and Order filed June 24, 1998, that there was no privilege for any communications written or oral originating with TPP Clinic and transmitted to DAK concerning Dr. Mandojana's treatment at TPP Clinic. Memorandum and Order at 13 [Doc. 45].

It was understood that it was a condition of his employment at DAK that TPP Clinic would regularly report to DAK on Dr. Mandojana's fitness to practice medicine. To that extent, Dr. Mandojana consented to such information being released to DAK, a third party. The privilege is therefore waived as to that information. *Id.* The undersigned went on to order that TPP Clinic produce for inspection and copying whatever written information went from TPP Clinic and its doctors and other employees to Dr. Rist and/or DAK concerning Dr. Mandojana's treatment and evaluation at TPP Clinic at any time from May, 1988 until Dr. Mandojana's employment at DAK ended. It was also ordered that Drs. Jobson and Pool be deposed about their written and oral communications with Dr. Rist and/or DAK concerning Dr. Mandojana's treatment and evaluation.

This previous ruling is entirely consistent with the holdings in *Zuniga, Pebsworth,* and *Taylor.* TPP Clinic was ordered to reveal written and oral communications that went from it to a third party, DAK Clinic and/or Dr. Rist. To that extent, the psychiatrist/patient privilege was deemed waived. In a similar vein, the undersigned finds that the four authorizations which Dr. Mandojana signed authorizing a release of medical information do not constitute a blanket waiver of the psychiatrist/patient privilege; rather, the undersigned finds that all that has been waived by Dr. Mandojana is the actual information transmitted to third parties like Equifax and Shenandoah Life Insurance Company by TPP Clinic. This result serves the salutary policies behind the psychiatrist/patient statutory privilege. As indicated by the quote from the Weinstein treatise, the court has considerable discretion in fashioning the scope of any waiver. The patient of a psychiatrist who signs a medical release authorization for purposes of obtaining, for example, a life insurance policy does not reasonably contemplate that the entire files containing detailed psychological profile of the patient or substantive accounts of therapy sessions will be disclosed. *See In re Zuniga,* 714 F.2d at 640–41.

The rule of partial disclosure as a qualification on the privilege should not be applied without reference both to the objectives of the privilege and the qualification. Wig-

more explains the rule of partial disclosure as one dictated by considerations of fairness. . . . The rule has also been explained as an attempt to prevent the use of the privilege as an "additional weapon."

*IBM v. Sperry Rand Corp.,* 44 F.R.D. 10, 13 (D.Del.1968).

### IV. *Conclusion*

For the reasons indicated, it is **ORDERED** that TPP Clinic produce for inspection and copying any written communications between it and third parties that resulted from the four authorizations for disclosure signed by Dr. Mandojana. Of course, if those disclosures have been made previously, they need not be made again. Any such disclosure shall be made within 10 days of entry hereof. Except to the extent indicated, the plaintiffs' motion to compel production of documents is hereby **DENIED.**

**IT IS SO ORDERED.**