[No. 45962.   En Banc.   October 18, 1979.]

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant*, v. WILLIAM LATTA, *Respondent*.

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant*, v. K. L. PARTLOW II, ET AL, *Respondents*.

*Slade Gorton, Attorney General,* and *Walter E. White* and *David R. Minikel, Assistants,* for appellant.

*Theodore D. Schultz* and *E. Robert Fristoe* (of *Fristoe, Taylor & Schultz, Ltd., P.S.*), for respondent Latta.

*McPhee, Pope & Phillips* and *Wm. Thomas McPhee,* for respondent Partlow.

*William J. Leedom* on behalf of Washington State Medical Association, amicus curiae.

HICKS, J.—In each of these cases, consolidated on appeal, the Department of Social and Health Services (DSHS) appeals an order of the Thurston County Superior Court quashing its subpoenas seeking medical records of Medicaid

patients. The trial court based its order upon the physician–patient privilege, RCW 5.60.060(4). The Court of Appeals, Division Two, certified the case to this court. We accepted certification and we reverse the trial court.

## Latta Case

There is essentially no dispute as to the procedural facts. March 3, 1978, DSHS caused an administrative subpoena duces tecum to be served upon William Latta, administrator of the Memorial Clinic (Clinic), a medical corporation, which participates in the medical assistance program of DSHS. The subpoena, issued in the course of a performance audit of the Medicaid program, ordered Latta to appear and "bring with you and produce all medical records of Memorial Clinic, Ltd., P.S. pertaining to" a certain minor child named therein, who was a recipient of Medicaid benefits. The subpoena was issued under authority contained in RCW 74.04.290.

Latta advised DSHS that the Clinic would not release the medical records without prior patient authorization. He then caused a letter to be written to the parents of the minor, requesting a release consenting to the furnishing of the child's records.

March 15, 1978, a second subpoena duces tecum was delivered to Carl Lippert, assistant administrator of the Clinic, commanding Latta to "produce all medical records of Memorial Clinic, Ltd., P.S. pertaining to" four named minors. Again, the demand to release the records without written patient authorization was refused. Letters were written to the parents seeking releases.

March 29, DSHS filed in Thurston County Superior Court a petition for enforcement of the subpoenas dated March 2, 1978, and March 14, 1978. The petition for enforcement alleged that the subpoenas were issued by an authorized Medicaid claims examiner conducting a performance review under the statute. An order was requested directing Latta to produce the records pursuant to the sub-

poenas or to show cause for failure so to do. Such an order was issued to William Latta, as administrator of the Clinic.

Latta moved the court for an order of dismissal and an order quashing the show cause order. The motion was based on two grounds: (1) the petition failed to state a claim on which relief could be granted; and (2) the issues involved the "substantial rights and privileges of persons who are necessary and proper parties to this proceeding but who are not joined as parties". The matter came on for hearing on April 28. In the meantime, a release had been signed by the parents of the child whose records were sought under the March 2, 1978, subpoena, which mooted the contest over that subpoena.

Procedurally, counsel for Latta and the Clinic contended that the petition failed to state a claim because the two attached subpoenas (not incorporated by reference) deleted the names of patients. It was argued that failure to accompany the petition with the complete subpoena was fatal. The Clinic also raised the "question" of whether the proper parties were before the court. It stated "the petition seeks an order affecting the substantive rights and privileges of individuals who . . . are necessary and proper parties to this proceeding" under CR 19. Regarding the substantive issues, the Clinic asserted the physician–patient privilege, set forth in RCW 5.60.060(4), on behalf of its patients. It argued that the medical records are privileged communications protected under the statute; and absent waiver or written authorization, the Clinic could not be compelled to release the information. The Clinic also argued that its position was supported by consideration of medical ethics and a potential privacy invasion suit against it.

In its oral opinion, the trial court stated that it could not decide the question of whether the patients, as a matter of law, had waived the physician–patient privilege by accepting Medicaid assistance: "[the patients] should be parties to this suit for me to determine that." The court limited its decision to whether the physicians were justified in refusing

to produce records. In its order entered on May 8, 1978, the court assumed, "without deciding, that the omission . . . of the names of the respective patients whose records are covered by the administrative 'Subpoena Duces Tecum' . . . is not material to deciding other issues raised," because the names had been provided on the subpoena served on the Clinic. The order further stated that the medical records sought by DSHS contained information acquired by Clinic doctors "in attending their patients to enable such physicians and surgeons to prescribe or act for those patients." It further granted the motion for dismissal with prejudice and quashed the show cause order.

June 5, 1978, DSHS filed a notice of appeal to the Court of Appeals.

### PARTLOW CASE

Drs. Partlow and Price are pathologists, who own and operate Olympia Medical Laboratory. Treating physicians refer patients to the laboratory for various tests. The doctors participate in the medical assistance program of DSHS. June 21, 1978, pursuant to RCW 74.04.290, an appropriate officer of DSHS issued a subpoena duces tecum directed to Drs. Partlow and Price and commanded them to:

> produce all books of accounts pertaining to the records of Olympia Medical Laboratory and specifically: a) The accounts payable to major reference laboratories; b) The accounts receivable for physicians billed for laboratory tests; and, c) The physicians' laboratory test orders and corresponding laboratory test results for the Medicaid recipients from the attached lists.
>
> The requested information pertains to and verifies claims which were submitted under the Medicaid program and for which payment was made by the Department to Olympia Medical Laboratory from January 1, 1977 through December 30, 1977.

The doctors declined to produce the records identified in the subpoena. Affidavits submitted by the doctors suggest that an offer of "piecemeal" compliance was rejected by DSHS, but the record brought to this court is void of any

further information on the subject. The doctors did mail release forms to the approximately 30 patients named in the subpoena.

July 13, 1978, DSHS filed a petition for enforcement of the subpoena in Thurston County Superior Court. An order to show cause was issued. The doctors moved for dismissal on several grounds. The matter came on for hearing on July 20, 1978. Counsel stipulated to withdraw subpart (b) of the subpoena without prejudice. DSHS stipulated to accept information regarding accounts payable to major reference laboratories with patients' names deleted, whereupon the court ordered compliance with subpart (a). The court dismissed subpart (c) of the subpoena, which had requested test orders and test results for listed Medicaid recipients. November 18, 1978, based on its decision in the Latta case, the trial court entered its order of dismissal. DSHS filed a notice of appeal from the dismissal of enforcement of subpart (c).

The Court of Appeals consolidated the Latta and Partlow appeals and certified the case to this court, which we accepted.

We first address several procedural objections raised on appeal. Latta moves this court to dismiss the appeal on the basis of an inadequate assignment of error under RAP 10.3(a)(3). The assignment of error to which Latta objects is "appellant assigns error to the entire order of the court of May 8, 1978." The trial court's order consisted of two pages of recitation of "findings", followed by an order quashing the order to show cause.

■ We are of the view that dismissal would be inappropriate under RAP 10.7. Further, it is clear from reading the order that the court's action was premised on its finding that the physician–patient privilege, RCW 5.60.060(4), applies. The specificity of the issue before the trial court discloses the basis for assigned error pertaining to an issue of law; the objection of DSHS is adequately presented in its brief. Unlike *Tremlin v. Tremlin*, 59 Wn.2d 140, 367 P.2d 150 (1961), cited by Latta, there is no requirement to

search the record for possible error. *See State v. Reader's Digest Ass'n, Inc.*, 81 Wn.2d 259, 501 P.2d 290 (1972).

■ Latta also asserts that DSHS failed to state a claim. CR 12(b)(6). RCW 74.04.290 permits DSHS to petition the superior court to enforce it subpoena. "The petition shall be accompanied by a copy of the subpoena". In the instant case, the copy of the subpoena attached to the petition had the patients' names deleted. Latta argues that this omission was fatal and advances a number of arguments in support of this position. We find them to be without merit. The subpoenas served upon Latta, both the one that became mooted and the one here in contention, contained the names of the patients. Had the trial court required the patients' identities, a trial amendment would have sufficed.

Before the trial court, Latta asserted as a ground for dismissal under CR 19 that the patients named in the subpoenas were "necessary and proper parties." On appeal, Latta argues that the patients are indispensable parties and failure to join them as parties "provides an additional ground for sustaining the Trial Court's dismissal of the action." DSHS counters that a subpoena enforcement action is governed by RCW 74.04.290 which speaks only of the issuing agency and the person or organization to whom the subpoena was directed.

■ The necessity for joinder of a party is governed by CR 19, which contemplates a 2–step process. An initial determination is made as to whether the absent party is needed for a just adjudication of the litigation. CR 19(a). If that determination is made in the affirmative and it is not feasible to join the party, the question becomes whether the party is indispensable. An indispensable party not joined results in dismissal of the matter. CR 19(b). In the instant case, the trial court did not formally make the initial determination under CR 19(a). DSHS was not ordered to join the recipient patients as parties, thus considerations under CR 19(b) were never addressed.

Here, the trial court found the physician–patient privi-

lege "applicable" to the information sought by subpoena and concluded that the information may not be disclosed "unless and until the patient concerned waives such privilege". Absent an order of joinder by the trial court, we conclude the dismissal of the action was based upon the privilege and not a defect of parties.[1]

Our primary concern is whether the physician–patient privilege, RCW 5.60.060(4), is applicable to DSHS compliance audits of medical records of Medicaid recipients. We conclude it is not.

At common law, no testimonial privilege existed for communications or information exchanged between patient and physician. The privilege is a creature of statute. RCW 5.60.060(4) provides:

> A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient, but this exception shall not apply in any judicial proceeding regarding a child's injuries, neglect or sexual abuse, or the cause thereof.

■ The privilege is a procedural safeguard, not a rule of substantive or constitutional law; therefore, its application turns on the language and interpretation of the statute. The purpose of the statutory privilege is to surround patient–physician communications with "the cloak of confidentiality" to promote proper treatment by facilitating full disclosure of information. A secondary purpose is to protect the patient from embarrassment or scandal which may result from revelation of intimate details of medical treatment. *See State v. Boehme,* 71 Wn.2d 621, 430 P.2d 527 (1967).

As a statute in derogation of common law, RCW 5.60.060(4) is to be construed strictly. *Randa v. Bear,* 50 Wn.2d

---

[1]DSHS asserts that recipients waive the physician–patient privilege when medical aid is accepted under the Medicaid program. The trial court ostensibly believed it could not make such a determination without a joinder of the patients, and did not address the issue.

415, 312 P.2d 640 (1957). The privilege is to be limited to its purposes. *State v. Boehme, supra.*

The purpose of the Medicaid program established under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.,* is set forth as follows:

> For the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services . . . The sums made available under this [act] shall be used for making payments to States which have submitted, and had approved by the Secretary of Health, Education, and Welfare, State plans for medical assistance.

In order that this state might participate in the Medicaid program, the legislature enacted RCW 74.09.500, which provides in part:

> The department of public assistance is authorized to comply with the federal requirements for the medical assistance program provided in the Social Security Act and particularly Title XIX of Public Law (89–97) in order to secure federal matching funds for such program.

Reviews and audits of the records of participant providers of services in the program are required. 42 U.S.C. § 1396a(a)(27) and (30). Absent such reviews and audits in compliance with federal statutes and regulations and in accordance with the state's plan as approved by the Secretary of Health, Education, and Welfare, the state's Medicaid program could well be jeopardized by the withdrawal of federal funds. *See* 42 U.S.C. § 1396.

Neither the applicants who seek medical services through the Medicaid program nor the providers of those services are legally required to participate in the program. While recipient patients may have little alternative than to use the Medicaid system if they are to obtain medical services, providers do have such an alternative. Providers of services under the program initially must agree to abide by applicable federal and state statutes and regulations. They must

keep "such records as are necessary fully to disclose" the extent of services provided. In addition, they must furnish DSHS information regarding payments claimed for providing Medicaid services. 42 U.S.C. § 1396a(a)(27). Applicants for services must establish eligibility, both medically and financially, before receiving medical assistance under the program. *See, e.g.,* 42 U.S.C. § 1396a(a)(17). If not explicitly, certainly implicitly, recipients of Medicaid services must abide by applicable federal and state statutes and regulations. We think it clear that the matter of physician–patient privilege simply does not arise under these circumstances.

■ This is not a question of public disclosure as contemplated by RCW 5.60.060(4) (physician–patient privilege). Neither federal nor state law permits public release of information obtained by DSHS. Confidentiality is required. *See* 42 U.S.C. § 1396a(a)(7); 45 C.F.R. § 205.50(b) (1978); RCW 74.04.060; and WAC 388–81–035. Under RCW 74.04-.060, disclosure in judicial proceedings is strictly confined to purposes "directly concerned" with the administration of the program and records are "deemed privileged communications" under all other circumstances. Violation of the statute is a gross misdemeanor.[2]

Regardless of the strictures of confidentiality, however, DSHS may not subpoena patient information regarding non–Medicaid services. While we have no doubt that by its subpoenas addressed to Latta, as administrator of Memorial Clinic, DSHS was seeking only Medicaid generated information, the subpoenas were not so narrowly drawn. They ordered Latta to "bring with you and produce all medical records of Memorial Clinic, Ltd., P.S. pertaining to" certain named minors. This demand must be limited to records made in the course of furnishing Medicaid services

---

[2] "It shall be unlawful, except as provided in this section, for any person, body, association, firm, corporation or other agency to solicit, publish, disclose, receive, make use of, or to authorize, knowingly permit, participate in or acquiesce in the use of any lists or names for commercial or political purposes of any nature. The violation of this section shall be a gross misdemeanor." RCW 74.04.060.

to the named patients. As so restricted, the trial court may enforce the subpoena.

The issues raised by the doctors operating the Olympia Medical Laboratory parallel those discussed in the Latta case. Subpart (c) of the subpoena in the Partlow case is the only portion now at issue. It contained language much more narrowly drawn. The subpoena required the production of "the physicians' laboratory test orders and the corresponding laboratory test results for the Medicaid recipients from the attached lists." This subpoena was further narrowed by seeking only information regarding claims submitted to and paid by DSHS for the calendar year 1977. For the reasons set forth above, we hold that subpart (c) of the subpoena dated June 21, 1978, directed to Drs. Partlow and Price, may be enforced by the trial court as issued.

In each of the cases on appeal, the order of the trial court is reversed and the cases remanded for further proceedings not inconsistent with this review.[3]

HOROWITZ, DOLLIVER, and WILLIAMS, JJ., and HAMILTON and RYAN, JJ. Pro Tem., concur.

ROSELLINI, J. (concurring)—As I understand the intent and purpose of the statutes under which the medical records in these cases were subpoenaed, they permit the securing of the records without the consent of the named patient only for the purpose of auditing the claims submitted by the providers of medical care. The name of the patient is important only to identify the claim and the information obtained is not to be used against the patient in any way. The right of privacy is to be protected, save for the exposure necessarily instant to the audit.

---

[3]We are aware that after this case was argued in this court, the legislature added to RCW 74.09 by enacting Laws of 1979, 1st Ex. Sess., ch. 152, § 10, which addresses issues in this case and which became effective some months after this opinion was in circulation. The legislative enactment does not change the results we reach herein.

With this understanding, I concur in the majority opinion.

UTTER, C.J., and WRIGHT, J., concur with ROSELLINI, J.