In Re SEARCH WARRANT FOR 2045
FRANKLIN, DENVER, COLORADO,

W. Bruce WILSON, M.D., and W.
Bruce Wilson, M.D., P.C.,
Appellants,

v.

Norman EARLY, District Attorney, Second Judicial District, and Colorado Medicaid Fraud Control Unit, Appellees.

No. 84CA0519.

Colorado Court of Appeals,
Div. II.

Sept. 5, 1985.

Lohf & Barnhill, P.C., Dennis A. Graham, Denver, for appellants.

Duane Woodard, Atty. Gen., Richard H. Forman, Sol. Gen., Norman Early, Jr., Dist. Atty. Gen., William G. Meyer, Sp. Deputy Dist. Atty., Guy Till, Sp. Deputy Atty. Gen., Denver, for appellees.

METZGER, Judge.

W. Bruce Wilson, M.D., and W. Bruce Wilson, M.D., P.C. (Wilson), appeal a decree denying their motion for return of property pursuant to Crim.P. 41(e), alleging that the trial court erred in refusing to conduct an adversary hearing to determine the constitutional validity of the search warrants and their manner of execution. We affirm.

On January 26 and 30, 1984, investigators from the Colorado Medicaid Fraud Control Unit (Unit) executed search warrants at the medical offices of Dr. Wilson. The search warrants were based upon information that he was billing the state Medicaid program for medical services which he had not provided.

The first warrant sought daily appointment books for 1982, 1983, and 1984; documents outlining internal office procedure regarding Medicaid billing practices; code keys to differentiate Medicaid and private patient files; Medicaid patient records for 179 patients treated from January 1, 1982, to 1984; physician's copies of Medicaid claim forms for 179 patients; general ledgers; general journals; cash receipt journals; bank statements; bank reconciliation statements; deposit slips; cash records; purchase records; sale or revenue records; accounts receivable ledgers; patient billing documents; disbursement records or other financial documents for 1982 and 1983; blank Medicaid billing forms and books; pamphlets; letters relating to Medicaid rules; employer time cards; time sheets; job descriptions; laboratory books and logs; and invoices and fee schedules. The second warrant authorized seizure of "control-ofax" forms and billing stubs for the 179 Medicaid patients for 1982 and 1983.

The search warrants were issued *ex parte* after the trial court found that probable cause existed to search for the specific items set forth in the warrants, that the warrants and affidavits sufficiently described the items to be seized, and that the patient records sought by the warrants were not subject to the physician-patient privilege.

The warrants were executed on the same days they were issued, and the seized documents were immediately sealed without inspection. Copies of most seized patient medical files and financial records were made and left at Wilson's office. Shortly thereafter, as provided in the court's orders authorizing the search warrants, Wilson petitioned the district court for a hearing to determine whether the items seized were within the scope of the search warrants.

At a hearing on February 10, 1984, the trial court ruled that Wilson could review the sealed records and make objection to those specific items that he believed to be outside the scope of the warrants, which he did. Wilson also filed a petition under Crim.P. 41(e), challenging the constitutional validity of the searches and seeking return of all documents seized.

After an *in camera* review of the documents seized, the trial court held that the procedures used by the Unit in seizing the documents pursuant to the search warrant

were reasonable, and ordered the release to Wilson of six of the 550 documents and files seized. It denied Wilson's motion for an adversary hearing. The court then stayed its release order, and the records have remained sealed pending the outcome of this appeal. Wilson's motion for reconsideration was denied on April 2, 1984.

In April 1984, Wilson filed an original proceeding with the Colorado Supreme Court challenging the trial court's decree of March 2, 1984. This original proceeding was dismissed on April 26, 1984. He filed an appeal with this court the same day. On April 30, 1984, the People filed a verified motion to dismiss and request for sanctions in this court, alleging that this court was without jurisdiction to entertain Wilson's "interlocutory" appeal, which motion we denied on May 11, 1984.

## I.

Wilson first contends that this court has jurisdiction and that he is entitled to appellate review of the district court's denial of his motion for return of property filed pursuant to Crim.P. 41(e). We agree.

■ A decision on a Crim.P. 41(e) motion in a criminal case is ordinarily interlocutory and therefore unappealable. *Di Bella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). However, actions for return of property prior to the initiation of any civil or criminal proceedings flowing from the seizure of that property are in the nature of an equitable proceeding and are therefore governed by equitable principles. *United States v. McWhirter*, 376 F.2d 102 (5th Cir.1967).

■ Preliminarily, we must determine whether Wilson's petition is solely for the return of property or whether it is tied to a criminal prosecution "in esse" against him. If the petition is part of an independent proceeding, it is appealable. *United States v. One Residence and Attached Garage*, 603 F.2d 1231 (7th Cir.1979). However, if it is merely a step in a criminal prosecution, it is appealable only after final judgment or other termination of the prosecution. *An-*

*gel-Torres v. United States*, 712 F.2d 717 (1st Cir.1983). A criminal prosecution is not "in esse" until the criminal process shifts from an investigatory to an accusatory stage. *Angel-Torres v. United States, supra*.

■ Here, no information has been filed, no indictment has been returned, and no arrests have been effected. The criminal process, if such there be, is, at best, in the investigatory stage. *See United States v. One Residence and Attached Garage, supra*. Wilson's petition for return of property is part of a discrete action, not tied to any other civil or criminal proceedings. Thus, the order denying his petition was a final judgment or decree in an equitable proceeding and was a disposition on the merits, leaving no question remaining for judicial determination. *Gottone v. United States*, 345 F.2d 165 (10th Cir.1965).

Accordingly, this court has jurisdiction to review the trial court's decree, and Wilson is entitled to such a review.

## II.

### A.

Relying on the concurring opinion of Justice Quinn in *Law Offices of Bernard D. Morley, P.C. v. MacFarlane*, 647 P.2d 1215 (Colo.1982), Wilson contends that he was entitled to a hearing resolving the question of the constitutional validity of the search warrants pursuant to his request under Crim.P. 41(e). Wilson argues that such a hearing is necessary to protect adequately the physician-patient privilege and to preserve the rights to privacy of both the physician and the patient. We disagree.

The reasoning in *Law Offices of Morley v. MacFarlane, supra*, was predicated upon the unique nature of the attorney-client privilege and the enhanced privacy interest underlying the attorney-client relationship. That enhanced privacy interest warrants a heightened degree of judicial protection and supervision when law offices are the subject of a search for client files or documents.

There is also a privacy interest underlying the physician-patient relationship. Colorado has long recognized the physician-patient privilege. Section 13–90–107, C.R.S. (1984 Cum.Supp.) provides in pertinent part:

"(1) There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:

.     .     .     .     .

(d) A physician or surgeon ... duly authorized to practice his profession pursuant to the laws of this state or any other state shall not be examined without the consent of his patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient...."

However, unlike the attorney-client privilege, this statute setting out the physician-patient privilege also specifies that the privilege does not apply to:

"(III) A review of a physicians' ... services by any of the following:

. . . .

(B) An organization authorized by federal or state law or contract to review physicians' ... services...."

Thus, the question is whether the Medicaid Fraud Control Unit qualifies as an organization pursuant to the foregoing statute and whether its seizure of the records falls outside the enhanced privacy rationale embodied in *Law Offices of Morley v. MacFarlane, supra.*

Sub-chapter XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. (1982), authorizes federal grants to states for medical assistance to persons in certain age, illness, and income categories. This Medicaid program is one of several cooperative federalized welfare programs administered jointly by state and federal governments. Sub-chapter XIX provides in essence that when a state has in place a medical-assistance plan approved by the Secretary of Health and Human Services, a portion of the cost of that plan is paid by federal funds so long as the state abides by the federally approved plan. *See* 42 U.S.C. § 1396 (1982).

■ Participation by a state in the Medicaid program is voluntary. However, once a state has made a decision to participate in the Medicaid program, it must meet not only the requirements established by the federal statutory scheme, but must also comply with the administrative guidelines promulgated pursuant to the statute. 42 C.F.R. § 430.0(b)(1) (1984). *See also T.H. v. Jones,* 425 F.Supp. 873, (D.Utah 1975), *aff'd in part,* 425 U.S. 986, 96 S.Ct. 2195, 48 L.Ed.2d 811 (1976). Compliance is mandatory. 42 U.S.C. § 1396a(1) (1982).

Upon a determination that a state has not complied with an approved Medicaid plan, the Secretary of the Department of Health and Human Services may withhold payments to that state. 45 C.F.R. § 201.6 (1984); *see also Arthur C. Logan Memorial Hospital v. Toia,* 441 F.Supp. 26 (S.D.N.Y.1977).

By virtue of the General Assembly's passage of the Colorado Medical Assistance Act, found at § 26–4–101, et. seq., C.R.S. (1982 Repl.Vol. II), the State of Colorado has elected to participate in the Medicaid program. The Colorado Department of Social Services is designated as the single state agency to administer the Medicaid program for the State of Colorado. Section 26–4–104, C.R.S. (1982 Repl.Vol. II).

■ The Colorado Medicaid Fraud Control Unit was created pursuant to the Medicare-Medicaid Anti-Fraud and Abuse Amendments to Sub-chapter XIX of the Social Security Act, 42 U.S.C. § 1396b(q) (1982). Pursuant to the terms of the statute, the Unit is charged with the investigation and prosecution of all aspects of fraud in connection with the Medicaid program as a requirement for Colorado's receipt of federal funds. Pursuant to 42 C.F.R. § 455.-300(f)(1) (1984), the Unit must conduct a state-wide program for investigation and prosecution, or referral for prosecution, of violations of all applicable state laws per-

taining to fraud in the administration of the Medicaid program, the provision of medical assistance, or the activities of providers of medical assistance under the state Medicaid plan.

Concomitant with this authorization, 42 C.F.R. § 431.107(b)(2) (1984) also requires that providers of medical assistance pursuant to the Medicaid program must furnish, upon request, the Unit with any records necessary to disclose the extent of services the provider furnished to recipients. Consequently, the Unit is an "organization authorized by federal law, or state law, or contract to review the physician's ... services," as contemplated by § 13–90–107(1)(d)(III)(B), C.R.S. (1984 Cum.Supp.).

The tension between preservation of the privacy rights inherent in the physician-patient privilege and the necessity for proper administration of the Medicaid program has been addressed by both the Colorado General Assembly and the Congress of the United States. The public policy of maintaining and ensuring an efficiently operating Medicaid program outweighs the privacy interests inherent in the physician-patient relationship insofar as utilization of the Medicaid program is concerned. Consequently, we hold that Dr. Wilson does not have a privacy interest which is subject to the protections outlined in *Law Offices of Morley v. MacFarlane, supra,* in the records of his Medicaid patients sufficient to mandate either a return of these records, or a review of the constitutionality of the search warrants whose executions obtained them.

### B.

Wilson next asserts that the Medicaid patients have a right to privacy which mandates a hearing regarding the constitutionality of the warrants. We disagree.

■ A patient who receives medical assistance under the aegis of the Medicaid program implicitly waives the physician-patient privilege when he or she elects to participate in that program. Neither federal nor state law requires that any person participate in the Medicaid program as a patient or as a provider. Applicants for services must establish medical and financial need before receiving medical assistance under the Medicaid program. 42 U.S.C. § 1396a(a)(17) (1982).

As the Washington Supreme Court stated in *State, Department of Social & Health Services v. Latta,* 92 Wash.2d 812, 601 P.2d 520 (1979): "If not explicitly, certainly implicitly, recipients of Medicaid services must abide by applicable federal and state statutes and regulations. We think it clear that the matter of physician-patient privilege simply does not arise under these circumstances." Consequently, if a recipient of medical services has chosen to participate in the Medicaid program, that recipient waives the physician-patient privilege to the extent necessary for the state to verify the services billed by the provider.

### C.

■ Wilson next contends that much of the information seized concerned his non-Medicaid patients, and it is protected by the physician-patient privilege. Wilson is relying particularly on those items seized which consisted of patient's names, appointment dates, and his financial records. Consequently, he asserts that a hearing as to the constitutional validity of the search warrants should have been allowed as to that information. Again, we disagree.

The trial court concluded that there was an absence of privilege with regard to those business records since the information they contained was not necessary to enable the doctor "to prescribe or act for his patients." *See* § 13–90–107(1)(d), C.R.S. (1984 Cum.Supp.). We agree with the trial court.

In *Community Hospital Ass'n v. District Court,* 194 Colo. 98, 570 P.2d 243 (1977), the court held that the physician-patient privilege applies only to those records that reveal both the patient's name and ailment. If the record reveals only one or the other, the privilege does not apply. The records here do not reveal both the patients' names and ailments.

Additionally, other jurisdictions have held that the physician-patient privilege does not apply to patient names, appointment dates, or physician fees for treatment. *See Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (disclosure of patient's name not protected by right of privacy); *In re Albert Lindley Memorial Hospital,* 115 F.Supp. 643 (N.D.N.Y.1953), *aff'd,* 209 F.2d 122 (2nd Cir.1953), *cert. denied,* 347 U.S. 960, 74 S.Ct. 709, 98 L.Ed. 1104 (1954) (patients' names and addresses not privileged); *State ex rel. Mental Health Commissioner v. Estate of Stephens,* 426 N.E.2d 116 (Ind.App.1981) (cost of a patient's care not privileged); *In re Judicial Inquiry,* 8 App.Div.2d 842, 190 N.Y.S.2d 406 (1959) (dates physician saw patients and fees charged not privileged).

The lack of applicability of the physician-patient privilege as to these records obviates the necessity for a hearing to determine the constitutionality issues.

The decree is affirmed.

SMITH and KELLY, JJ., concur.