**In re GRAND JURY SUBPOENAS DUCES TECUM DATED JANUARY 30, 1986.**

**Misc. No. 85–00033–B.**

United States District Court,
D. Maine.

June 19, 1986.

Pasquale J. Perrino, Asst. U.S. Atty., Bangor, Me., and Joseph A. Wannemacher, Asst. Atty. Gen., Crim. Div., Augusta, Me., for U.S.

George Z. Singal, Bangor, Me., for movant.

## MEMORANDUM DECISION AND ORDER

CYR, Chief Judge.

Movant, a psychiatrist and sole shareholder of a professional service corporation, seeks to quash subpoenas *duces tecum*[1] directed to the corporation and the custodian of the records of the corporation. As grounds for the motion to quash, movant asserts that the subpoenas (1) are unreasonable and oppressive; (2) command the production of materials protected by a psychotherapist-patient privilege; and (3) compel movant to perform an incriminatory testimonial act in violation of his fifth amendment privilege.

## MERITS

### A. *Unreasonable and Oppressive*

Movant contends that the subpoenas are unreasonable and oppressive due to over-

breadth. He points to (1) the need to review all (2,500) patient files to gather the information; (2) the need to examine documents containing entries as to both Medicaid-Medicare patients and other patients so that the entries relating to non-Medicaid-Medicare patients can. be redacted; and (3) the business disruption caused by removal of these records.

A grand jury subpoena is not overly broad if it commands with sufficient particularity the production of relevant records covering a reasonable period of time. *In re Grand Jury Matters*, 751 F.2d 13, 18 (1st Cir.1984).

The grand jury is investigating whether the movant's Medicaid-Medicare billings for 1979–1982 were "inflated." Government counsel represents that the subpoenaed documents will aid in the determination of the accuracy of the billings. Although requests numbered 2, 5 and 6 include data as to other (non-Medicaid-Medicare) patients, such information could well be helpful in evaluating whether the hours billed in connection with Medicaid-Medicare patients were in fact available to such patients in light of the hours devoted to other patients.

The period of time encompassed by these subpoenas (4 years) does not itself appear unreasonable. Moreover, it seems that movant previously caused many of the requested documents to be culled from his records in response to state grand jury subpoenas seeking similar records.[2] In-

---

1. Each subpoena seeks production of the following:
    1. Patient ledger cards for all patients covered by Medicare and Medicaid for services rendered 1/1/79—12/31/82.
    2. Patient ledger cards for all other patients who received services from 1/1/81—12/31/82.
    3. All medical records for Medicaid and Medicare patients shown on attached list [naming 130 persons], including, but not limited to: consultation reports, doctor's progress notes, and correspondence with patients, families, or other physicians.

    4. All Medicare and Medicaid remittance advices for payments received and/or services rendered from 1/1/79—12/31/82.
    5. Appointment books for the period 1/1/79—12/31/82.
    6. Daily ledger sheets and monthly summaries for the period 1/1/79—12/31/82.

2. The state grand jury subpoenaed the following materials on January 31, 1983:
    Any and all medical and business records relative to patients treated by [movant] from 1/1/79 to present and covered by the Medicare and/or Medicaid programs, including, but not limited to, the following records:

deed, the only evidence of burdensomeness offered by movant is a December 9, 1983 affidavit from an office employee, which affidavit appears to have been directed at an earlier federal grand jury subpoena served on December 7, 1983 but never enforced by the Government. There is no contemporary evidence that the task described in the employee affidavit has not been or cannot be accomplished. This is particularly relevant in light of (1) the earlier production to the state grand jury and (2) the Government's offer to provide the corporation, at the Government's expense, with *copies* of patient records for use while the originals are examined by the grand jury. In short, movant has not demonstrated that compliance with the January 30, 1986 subpoenas would be unduly burdensome.[3]

## B. *Psychotherapist-Patient Privilege*

Movant, a psychiatrist, contends that the items sought by the subpoenas are protected from disclosure by a psychotherapist-patient privilege. Although proposed Federal Rule of Evidence 504(b) would have created a psychotherapist-patient privilege, it was not adopted by Congress, thus leaving the matter of witness privileges to Fed.R.Evid. 501, which provides that such privileges "shall be governed by the principles of common law as they may be interpreted by the courts of the United States in light of reason and experience."

The First Circuit has declined to decide whether a psychotherapist-patient privilege exists under federal common law principles. *United States v. Barrett*, 766 F.2d 609, 616 n. 8 (1st Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 258, 88 L.Ed.2d 264 (1985). The Fifth and Eleventh Circuits have refused to recognize a psychotherapist-patient privilege under federal common law. *See United States v. Lindstrom,* 698 F.2d 1154, 1167 (11th Cir.1983) [holding that no such privilege barred a criminal defendant from exploring the psychiatric background of a government witness]; *United States v. Meagher,* 531 F.2d 752, 753 (5th Cir.) [holding that no such privilege exists under federal law to preclude admission at trial of psychiatrist's testimony and records relating to a criminal defendant], *cert. denied,* 429 U.S. 853, 97 S.Ct. 146, 50 L.Ed.2d 128 (1976).

In *In re Doe,* 711 F.2d 1187 (2d Cir.1983), the Second Circuit espoused the analysis proposed by Professor Wigmore for determining whether communications should be privileged:

To begin, Professor Wigmore has set forth four conditions necessary to the establishment of a privilege against the disclosure of communications. They are: (1) the communication must be one made in the belief that it will not be disclosed; (2) confidentiality must be essential to the maintenance of the relationship between the parties; (3) the relationship should be one that society considers worthy of being fostered; and (4) the injury to the relationship incurred by disclosure must be greater than the benefit gained in the correct disposal of litigation. 8 J. Wigmore, *Evidence* § 2285, at 527 (McNaughton rev. 1961). Arguably

---

copies of billing forms, patient ledger cards, appointment books, progress notes, patient folders and correspondence with the patients and/or the Medicare and Medicaid programs. A second state grand jury subpoena requested the following additional materials on May 23, 1983:

Daily ledger sheets for the period January 1, 1979 to January 31, 1983.

All patient ledger cards which include or reflect visits, payments, charges, billings, or entries from January 1, 1979 to present.

**3.** Movant also notes that identical federal grand jury subpoenas were issued on December 7, 1983 and February 22, 1985, and that motions to quash those subpoenas were not responded to by the Government. However, neither did the Government seek to enforce those subpoenas; and it does not appear that the Government's lack of action on those earlier subpoenas prejudiced movant's ability to challenge the present subpoenas. Although the Government's inaction with respect to the earlier subpoenas may suggest a lack of diligence, it appears to have delayed the resolution of movant's challenges rather than to have imposed any added burdens of production upon movant.

these conditions could obtain in a true psychotherapist-patient relationship.

*Id.* at 1193.[4] However, the Second Circuit declined to recognize a psychotherapist-patient privilege in that case because

> there are no communications in these files of the intensely personal nature that the psychotherapist-patient privilege is designed to protect from public scrutiny. There is also no need to redact the names of the supposed patients before surrender of the files because there is substantial evidence indicating that no real psychotherapist-patient relationship existed between Doe and the persons whose identities appear in the files.

*Id.* at 1193–94.

Although the Sixth Circuit explicitly recognized the "necessity" for a psychotherapist-patient privilege under federal common law, it declined to apply the privilege to the mere disclosure of "the identity of a patient or the fact and time of his treatment." *In re Zuniga,* 714 F.2d 632, 636–39 (6th Cir.), *cert. denied,* 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983). *Zuniga* noted the substantial number of states (including Maine) which have adopted such a privilege and the "extensive" interests promoted by such a privilege, including society's interest in the advancement of mental health. *Id.* at 639. *See generally Developments in the Law—Privileged Communications,* 98 Harv.L.Rev. 1450, 1542–51 (1985); Note, *Evidence—The Psychotherapist-Patient Privilege—The Sixth Circuit Does the Decent Thing: In re Zuniga,* 33 U.Kan.L. Rev. 385 (1985). *See also* Advisory Committee's Notes to Proposed Rule 504. The Sixth Circuit cautioned that the scope of the privilege "is determined by balancing the interests protected by shielding the evidence sought with those advanced by disclosure." 714 F.2d at 639–40.[5]

The highest courts of some states, facing the apparent conflict between a statutory *physician*-patient privilege and mandatory Medicaid reporting requirements, *see* 42 U.S.C. § 1396a(a)(27), have declined to apply such a privilege to bar state grand jury subpoenas of patient records. *In re Grand Jury Investigation,* 441 A.2d 525 (R.I.1982) [involving only nonpsychiatric patient records]; *Camperlengo v. Blum,* 56 N.Y.2d 251, 253, 451 N.Y.S.2d 697, 436 N.E.2d 1299 (1982) [noting that because the psychiatrist did not argue that the subpoena was overly broad, it had "no occasion to delineate the precise boundaries of the exception" to the physician-patient privilege]; *Department of Social & Health Services v. Latta,* 92 Wash.2d 812, 601 P.2d 520 (1979) [involving *physician*-patient privilege, not psychotherapist-patient privilege].

The Massachusetts Supreme Judicial Court, distinguishing the aforementioned state court decisions, recently considered the interrelationship between Medicaid recordkeeping and reporting requirements and the Massachusetts statutory *psychotherapist*-patient privilege, Mass.Gen. Laws ch. 233, § 20B. *Commonwealth v. Kobrin,* 395 Mass. 284, 479 N.E.2d 674 (1985). The *Kobrin* court balanced the privacy interests of patients against the governmental interests in investigating and prosecuting Medicaid fraud. The court declined to approve the compelled "wholesale production" of patient records before a grand jury without regard to their relevance to the "critical issue in a Medicaid fraud investigation[,] whether the psychiatrist has accurately represented the number of patients seen, the frequency of patient visits, and the length of time per visit

---

4. In *In re Hampers,* 651 F.2d 19 (1st Cir.1981), the First Circuit similarly applied the Wigmore analysis in concluding that a Massachusetts statute prohibiting disclosure of state tax return information by the state commissioner gave rise to a qualified privilege under Fed.R.Evid. 501. *See also In re Production of Records to the Grand Jury,* 618 F.Supp. 440 (D.Mass.1985).

5. District court decisions indicating that such a privilege might apply in certain cases have also recognized the need to balance the privacy interests of the patients against the societal interest in obtaining the particular information. *See United States v. Layton,* 90 F.R.D. 520, 526 (N.D. Cal.1981); *Garrity v. Thomson,* 81 F.R.D. 633, 636 (D.N.H.1979); *Lora v. Board of Education,* 74 F.R.D. 565, 576–77 (E.D.N.Y.1977).

or psychotherapeutic session." 479 N.E.2d at 679–681. Accordingly, the court held that the state grand jury could properly demand "those portions of [the psychiatrist's] records documenting the times and lengths of patient appointments, fees, patient diagnoses, treatment plans and recommendations, and somatic therapies," but that "[t]hose portions of the records ... which reflect patients' thoughts, feelings, and impressions, or contain the substance of the psychotherapeutic dialogue are protected and need not be produced." *Id.* at 681.

The subpoenas in the present case seek, for the most part, only the identity of a patient or the fact and time of his treatment, information which *Zuniga* held did not fall within any privilege. However, Item No. 3, which is somewhat broader in scope, seeks:

All medical records for Medicaid and Medicare patients shown on attached list [naming 130 persons], including but not limited to: consultation reports, doctor's progress notes, and correspondence with patients, families, or their physicians.

Nevertheless, the Government argues, alternatively, that Medicaid and Medicare patients waived any privilege by signing forms, pursuant to Social Security regulations, which contained either of the two following authorizations:

A. I authorize any holder of medical or other information about me to release to the Social Security Administration and Health Care Financing Administration or its intermediaries or carriers any information needed for this or a related Medicare claim. I permit a copy of this authorization to be used in place of the original, and request payment of medical insurance benefits either to myself or to the party who accepts assignment below.

B. I authorize the release of any Medical information necessary to process this claim....

In a similar context the Tenth Circuit held that the "broad waiver to the Social Security Administration or its intermediaries or carriers for the furnishing of information about the patient," *United States v. Radetsky*, 535 F.2d 556, 569 n. 14 (10th Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976), removed any privilege bar to disclosure of patients' "yellow charts" showing diagnoses, treatment, dates of treatment, dates of visits, findings and medications, *id.*

In *In re Pebsworth*, 705 F.2d 261 (7th Cir.1983), the Seventh Circuit held that a grand jury subpoena seeking patient names, diagnoses and lists of visits was enforceable because "any arguable psychotherapist-patient privilege as to these specific kinds of billing and administrative records was intentionally and knowingly relinquished through the patients' assent to the publicizing aspect of the reimbursement and claims procedure [of Blue Cross/Blue Shield]." *Id.* at 262. Similarly, *Zuniga, supra*, relying on *Pebsworth*, held that any privilege of the patients as to their identity and the dates and length of treatment had been waived by their voluntary disclosures in submitting claims to Blue Cross/Blue Shield.

The Government essentially gains nothing by its waiver argument because the waivers as to "information needed for" or "information necessary to process" claims of Medicaid and Medicare patients would not appear to contemplate information beyond that which courts recognize as being outside of any psychotherapist-patient privilege, even in the absence of a waiver. In *Pebsworth, supra*, the Seventh Circuit indicated that it "might well have decided [the waiver issue] differently if the information sought under the subpoena involved detailed psychological profiles of patients or substantive accounts of therapy sessions." 705 F.2d at 262–63. Similarly, the waivers here would not necessarily be considered broad enough to encompass all of the documents requested by Item # 3 of the subpoenas, to the extent that those "reports, notes, and correspondence" contain information not needed to evaluate the legitimacy of claims. The question of whether a

particular document would come within the scope of a psychotherapist-patient privilege or within the coverage of the waivers relied on by the Government cannot be answered without specific reference to individual documents.

■ Nevertheless, there are clear boundaries of more general application. As concerns Medicaid and Medicare patients, the court is satisfied that any such privilege does *not* extend to "those portions of [the psychiatrist's] records documenting the times and lengths of patient appointments, fees, patient diagnoses, treatment plans and recommendations, and somatic therapies," *see Commonwealth v. Kobrin*, 395 Mass. 284, 479 N.E.2d 674, 681 (1985). As to other patients, no privilege precludes disclosure of "the identity of a patient or the fact and time of his treatment," *In re Zuniga*, 714 F.2d 632, 639 (6th Cir.1983), as demanded by these subpoenas.

Thus, any psychotherapist-patient privilege clearly would not apply to many of the subpoenaed documents. Nevertheless, movant's challenge is directed to *all* items sought. Such " 'blanket assertions of privilege are extremely disfavored,' " because "persons claiming a privilege 'must establish the elements of privilege as to each record sought ... so that the court can rule with specificity.' " *In re Grand Jury Matters*, 751 F.2d 13, 17 n. 4 (1st Cir.1984), *quoting In re Grand Jury Witness (Salas)*, 695 F.2d 359, 362 (9th Cir.1982) *and Matter of Walsh*, 623 F.2d 489, 493 (7th Cir.), *cert. denied*, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980).

■ Movant has not identified specific documents, or even categories of documents, containing "patients' thoughts, feelings, and impressions or ... the substance of any psychotherapeutic dialogue," *Commonwealth v. Kobrin*, 479 N.E.2d at 681, and, thus, the Government has not been called upon to respond in any specific way as to the need, if any, for such information.

Accordingly, the motion to quash on the basis of a psychotherapist-patient privilege shall be denied, without prejudice to its reconsideration on a more particularized challenge, which movant may pursue by identifying and submitting for *in camera* review each document sought under Item # 3 which contains information beyond that which the court has heretofore delineated as nonprivileged information. Production of all other materials shall not be delayed by any such request for reconsideration, and to the extent that a document contains both challenged material and material heretofore delineated as not privileged, such document shall be produced to the grand jury with the challenged portion redacted.[6]

### C. *Fifth Amendment Privilege*

Although the business organization to which the subpoenas are directed cannot invoke the fifth amendment privilege to prevent production of the subpoenaed records, movant argues that he is the sole custodian of the records and, therefore, cannot be compelled to produce the records in circumstances where the very act of production would incriminate him.

The subpoenas *duces tecum* are directed to movant's professional service corporation and to its "Custodian of records." Movant is the sole shareholder and the only professional affiliated with the corporation. Therefore, movant argues, under *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), he cannot be compelled to produce the subpoenaed records.

*Doe* held that the owner of a sole proprietorship could not be compelled to produce business records by means of a grand jury subpoena without a grant of use immunity regarding the act of producing the documents, where the act of production would involve testimonial self-incrimination regarding the existence, possession and authenticity of the records.

---

**6.** To the extent that movant is asserting that the patients have a constitutional privacy interest which is infringed by the subpoenas, movant must fail. *See In re Zuniga*, 714 F.2d at 641–42.

Earlier cases recognized a distinction between a sole proprietorship and a corporation or other collective entity.

> This Court has ... time and again allowed subpoenas against the custodian of corporate documents or those belonging to other collective entities ... over claims that the documents will incriminate the custodian despite the fact that producing the documents tacitly admits their existence and their location in the hands of their possessor....

*Fisher v. United States,* 425 U.S. 391, 411–12, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1970) [citations omitted]. The rationale for the "collective entity" rule was explained in *Bellis v. United States,* 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974):

> Since no artificial organization may utilize the personal privilege against compulsory self-incrimination, the Court found that it follows that an individual acting in his official capacity on behalf of the organization may likewise not take advantage of his personal privilege. In view of the inescapable fact that an artificial entity can only act to produce its records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the organization would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege, and largely frustrate legitimate governmental regulation of such organization.

Following the 1984 decision in *United States v. Doe,* courts have considered its impact on the collective entity rule. In *In re Grand Jury Proceedings (Morganstern),* 771 F.2d 143 (6th Cir.) (*en banc* ), —— U.S. ——, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985), the Sixth Circuit, *en banc,* held that the custodian could be compelled to produce partnership and corporate records before a grand jury, because nothing in *Doe,* a case involving a sole proprietorship, signaled a retreat from the collective entity rule. The Third Circuit reached the opposite conclusion in *In re Grand Jury Matter*

*(Brown),* 768 F.2d 525 (3d Cir.1985) (*en banc* ). In *Brown,* a 6–5 majority held that *Doe* 's requirement—that separate consideration be given to a fifth amendment privilege in the act of producing business documents not themselves privileged—obtained even where the records were those of a corporation or other collective entity.

Notwithstanding the apparent disagreement between the Third and Sixth circuits as to whether *Doe* 's "act-of-production" doctrine applies to the custodian of records of a collective entity, it is significant that the Sixth Circuit tempered its holding—that no such privilege existed—by noting that "if the government later attempts to implicate the custodian on the basis of the act of production, evidence of that fact is subject to a motion to suppress. 'Such proof would seek to add testimonial value to the otherwise testimony-free act of production.' " *In re Grand Jury Proceedings (Morganstern),* 771 F.2d at 148, *quoting United States v. Schlansky,* 709 F.2d 1079, 1083 (6th Cir.1983). *Accord In re Grand Jury Subpoena (85–W–71–5),* 784 F.2d 857 (8th Cir.1986). Thus, the Sixth and Eighth Circuits, though not requiring a grant of immunity prior to the production of corporate records by an individual custodian, would limit the risk of production with the promise of *de facto* use immunity in any subsequent criminal prosecution of the custodian.

Movant argues that the "collective entity" rule does not apply to his "corporation" because of the unique nature of a professional service corporation under Maine law, *see* Me.Rev.Stat.Ann. tit. 13, §§ 701–716 (1981), and because he is the sole shareholder of the corporation and the sole professional associated with it. As the dissent in *In re Grand Jury Matter (Brown), supra,* pointed out, the Supreme Court applied the collective entity rule of *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911), to a one-man corporation in *Grant v. United States,* 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913). 768 F.2d at 535 (Garth, J., dissenting).

The court need not decide whether the recent phenomenon of the professional service corporation somehow undercuts the rationale for the collective entity rule, because in this case there are two subpoenas seeking the same records, one directed to the corporation and the other directed to the custodian of the records. The corporation is obliged to comply with the subpoena directed to it, either through the custodian of its records or through some other appointed agent of the corporation. *In re Two Grand Jury Subpoenae Duces Tecum,* 769 F.2d 52, 57 (2d Cir.1985); *In re Grand Jury Matter (Brown),* 768 F.2d at 528–29. Movant's assertion that *he* is the sole custodian of the records does not relieve the corporation of its obligation to comply with the subpoena.

In *In re Two Grand Jury Subpoenae Duces Tecum, supra,* the Second Circuit considered a challenge to subpoenas directed to a one-man corporation and to the custodian of corporate records. In view of the fact that the custodian was the target of the grand jury investigation, the district court had directed that the records be produced by a person other than the target, such as an employee of the corporation. *Id.* at 54. Although recognizing that "an individual may have a fifth amendment privilege against being personally compelled to produce corporate documents ... [where] the act of producing documents may constitute personal testimony conceding the document's existence, their possession and control, or the fact that the one producing them believes them to be the documents described in the subpoena[,]" *id.* at 57, the court of appeals held that the *corporation* could not avoid its obligation to produce the subpoenaed documents.

> In such a situation the corporation must appoint some other employee to produce the records, and if no existing employee could produce records without incriminating himself by such an act, then the corporation may be required to produce the records by supplying an entirely new agent who has no previous connection with the corporation that might place him in a position where his testimonial act of production would be self-incriminating.

*Id.*

In the present case the subpoenas are directed to the corporation and its custodian. The Government contends that the movant's claim that he is the custodian of the records is not relevant to the corporation's obligation to produce the subpoenaed documents. Thus, at this stage it appears that the Government is not seeking to have movant himself produce the documents, notwithstanding the fact that one of the subpoenas is directed to the "custodian." In the absence of a clear indication that the Government seeks to compel movant himself to produce the subpoenaed documents (such as a motion to enforce the custodian subpoena after compliance by some corporate agent other than movant), there is no need to explore movant's fifth amendment claim further to determine the appropriateness of an order specifically excusing movant himself from producing the documents, *see In re Two Grand Jury Subpoenae Duces Tecum, supra,* or whether movant's fifth amendment privilege would be protected by the opportunity to seek suppression of any testimonial implications of his act of producing the documents, *see In re Grand Jury Proceedings (Morganstern), supra,* or whether a grant of use immunity by the Government must precede any enforcement of the subpoena against movant, *see In re Grand Jury Matter (Brown), supra.*

The Government has argued, alternatively, (1) that the "act-of-production" doctrine does not apply to the subpoenaed documents because they are "required records"; (2) that movant has "waived" any fifth amendment claim by virtue of his agreement, upon requesting payment for services, to "keep such records as are necessary to disclose fully the nature and extent of services provided under the Maine Medical Assistance Program (under Title XIX) and to furnish such information regarding any payments claimed ..."; (3) that movant is collaterally estopped from raising his fifth amendment claim, having

received an adverse determination of that claim on his motion to quash *state* grand jury subpoenas *duces tecum;* and (4) that his compliance with state grand jury subpoenas (following the denial of his motion to quash) abrogates any fifth amendment privilege. Since the court finds no fifth amendment bar to compelling some corporate representative to produce the subpoenaed documents, there is no need to address these issues.

## CONCLUSION

For the foregoing reasons the motion to quash the grand jury subpoenas *duces tecum* on the basis of the unreasonableness or oppressiveness of the requests and movant's asserted fifth amendment privilege is *DENIED.*

The motion to quash on the basis of the asserted psychotherapist-patient privilege is *DENIED,* without prejudice to reconsideration of the application of any such privilege to specific documents described in Item No. 3 of the subpoenas, which documents contain information beyond patient names, appointment times, diagnoses, treatment plans, recommendations, consultation reports, and somatic therapies; provided, however, that such reconsideration shall not delay production to the grand jury of all other documents as well as those portions of challenged documents (with challenged portions redacted) containing only the aforementioned types of information.

Further consideration shall be accorded to movant's fifth amendment challenge in the event that the Government seeks to compel production of the documents by movant himself, rather than by some other corporate custodian or agent.

SO ORDERED.